## SUPREME COURT.

THOMAS HITT, respondent, agt. LEVI CROSBY, and others, appellants.

The *residence* of a person, for the purposes of taxation, is where he exercises his political rights, such as *voting for public officers*, and discharges his political duties, such as *paying taxes for the support of the government*.

And where a person being a single man and having no family, produces evidence tending to show that his residence was in a particular town in another state, during a certain year, it is competent in order to counteract such evidence to show that during such year he did not vote or pay taxes in such town, and that the conduct on his part and the circumstances of his business relations tended to fix his residence in a town in this state where he was assessed and taxed.

Under the act of 1855, (*Laws* 1855, *p.* 44), *non-residents* of this state, who are *pedlers of goods* in this state, are liable to *taxation* upon the money invested in their business in *each town* in which they peddle their goods. And if they are actually assessed in more than one town, their remedy is by swearing off the assessments.

*Fourth District, General Term, January*, 1864.

THIS was an action of trespass brought before a justice of the peace to recover the amount of a tax paid by the plaintiff.

The defendants were assessors of the town of Granville in the county of Washington, and the complaint alleged that they assessed the plaintiff without jurisdiction of his person or property.

The answer alleged that the plaintiff was a resident of said town and liable to be assessed therein. (*See Mygatt* agt. *Washburn*, 15 *N. Y. R.* 316.)

The jury found a verdict for the defendants, and on ap-

peal the county court reversed the judgment. The defendants now appeal from the judgment of the county court.

O. F. THOMPSON and A. S. BURDICK, *for the appellants.* TIMOTHY CRONIN and JAMES GIBSON, *for the respondent.*

By the court, ROSEKRANS, J. The justice's return states that it contains all the evidence given on the trial. Assuming this to be the case, the justice should nave non-suited the plaintiff, and the jury correctly rendered a verdict for the defendants.

It was not shown that the defendants had done more than enter the plaintiff' name on the assessment roll. The complaint alleged that the assessment against the plaintiff was collected by a warrant issued by the defendants against the plaintiff's property. There was no evidence that the defendants ever issued such warrant, and there is no law which authorizes town assessors to issue warrants to collect assessments. When the plaintiff rested the case the defendants moved for a non-suit on the ground that no cause of action was established by the evidence, and because the complaint was unsupported and unproved.

This was sufficient to require of the county court an affirmance of the judgment, notwithstanding errors may have been committed by the justice in the admission or rejection of evidence, none of these errors related to the question whether the plaintiff had given sufficient evidence to sustain his complaint.

But aside from this, I do not think the justice or the jury committed any error for which the judgment should have been reversed by the county court. The plaintiff testified on his own behalf that in 1855 he was a resident of Pawlett, Vermont; made it his home there; was not married, and had no family; had no home anywhere else; and in 1855 had no place of living in Granville; he sup-

posed he was a voter in Pawlett in 1855; his horse, goods and property were there half the time, and a good share of his property was there all the time; he was sick, and went there to stay; he was sick there three or four weeks. This proof in all its parts was given for the purpose of showing that plaintiff at the time he was assessed by the defendants in 1855 was a resident of Pawlett, Vermont. It was competent for the defendants to counteract these facts, or the conclusion sought to be drawn from them by any proof legitimately bearing upon the question. Accordingly they proved by plaintiff on his cross-examination that although he claimed to be a voter in Pawlett in 1855, he did not vote there in that year, but that he voted in 1855 and 1856 in Rutland and Wallingford, Vermont, and for state officers in 1855. That he did not pay taxes in Pawlett in 1855. That he was a pedler of dry goods in 1855, and in that year peddled in Granville; that he bought hides in 1855 in Granville to the amount of $500 to $800, and took them in at a place he selected there; had bought hides there every year up to 1856; he kept a safe there in which he kept his papers in 1855; he received and mailed his letters mostly at the Granville post-office; he had his washing done mostly at Granville; he came to Granville once a month in his business, and would spend two or three days on an average getting through the town; between 1851 and 1855 he stayed in Granville in fifty different places; for twenty years before 1855 he bought skins in Granville; in 1854, when he went to Blossom's, in Pawlett, he stayed one night; he stayed at Blossom's two or three days at a time; he purchased no hides of any amount in any town save Granville.

Subsequently the plaintiff testified that he did not vote in 1855; he testified that in the spring of 1853 or 1854, he went into Blossom's house as he was passing and asked Blossom what he would board him for a week, and told Blossom he wanted a house; Blossom didn't remember the

remark that plaintiff testified to " that he wanted a house."
Blossom said that plaintiff asked him how much he would
ask to keep him and his horse per week, and plaintiff go
and come when he pleased, but that no time was mentioned
that plaintiff wished to continue.

I think the jury were justified in finding from this evi-
dence that plaintiff was a resident of Granville in 1855.
He transacted the principal part of his business there,
received and mailed his letters there, kept his papers in a
safe there, boarded there a considerable portion of his
time, and had the most of his washing done there. Aside
from the secret intent of the plaintiff, these acts would
furnish strong evidence that the plaintiff's residence was
at Granville, he being a single man and having no family.
The jury was justified in disregarding the plaintiff's testi-
mony as to his intent. Blossom did not agree with plain-
tiff as to the remark that he wanted a house, and the plain-
tiff has contradicted himself on the subject of voting in
1855.

The evidence that plaintiff did not pay taxes in Pawlett
was objected to, and the objection was properly overruled.
A man's residence is where he exercises his political rights,
such as voting for public officers, and discharges his politi-
cal duties, such as paying taxes for the support of the
government. The plaintiff had sworn to his secret pur-
pose or intent to regard Pawlett as his residence in 1855,
and that he was a voter there in that year.

The defendants proved that he did not vote in Pawlett
in 1855. This showed that he did not exercise his politi-
cal right there, and the evidence offered that he did not
pay taxes there in 1855 showed that he did not perform
his political duty there. Clearly the conduct of a man is
competent evidence upon the subject of residence. This
was decided in the case of *Richmond* agt. *Vassalborough*,
(5 *Greenl. R.* 396), and was approved in the case of *Craw-
ford* agt. *Wilson*, (4 *Barb. R.* 522, 523.)

But if it be assumed that the plaintiff was a resident of Pawlett, Vermont, I think the verdict was right. The act 1855 (*p*. 44) provides that " all persons doing business in this state as merchants, bankers or *otherwise*, and not residents of this state, shall be assessed and taxed on all sums invested in any *manner* in said business, the same as if they were residents of the state." The plaintiff upon this assumption was a non-resident of this state, and was doing business as a merchant or otherwise. He was a pedler in this state and engaged in that business, and in buying hides and skins in Granville, and had been for thirty years. He says he "had occasion to be in Granville in 1855 in his business of peddling, buying and selling goods, hides and calf skins ; that he had peddled in Granville for nearly 20 years before 1855." He had money invested in this business *in some manner*, and the law says he shall be assessed on all sums invested " *in any manner* in his business." The expression " money invested in business " means nothing more than money laid out or put into business with the purpose that it shall return a profit. A pedler's money is just as much invested in his horse and carriage and stock of goods as a regular merchant's money is invested in his store and store house and stock of goods.

The non-residents of this state, who are to be taxed under the act of 1855, are to be taxed " the same as if they were residents." Clearly if the plaintiff was a resident of Granville peddling, buying and selling goods, skins and hides, he would be subject to taxation on the money invested in such business. It is said that the plaintiff peddled goods and bought skins and hides in 50 other towns besides Granville ; to the extent that he so traded he interfered with the established traders settled in those towns and enjoyed the protection of the government over himself and his property, and should be taxed in each for the money invested in each town in his business. If by mistake he should be assessed in all the 50 towns for the same

investment in whole or in part the law affords him a remedy for this error of judgment on the part of the assessors by allowing him to appear before them and swear off his tax.

It is objected that the justice erred in allowing the defendants to prove that they came to the conclusion that plaintiff was liable to be taxed. The answer to this is that the plaintiff had previously given the same evidence by introducing the assessment roll, signed by the defenfendants as assessors, with the plaintiff's name upon it. Besides the law presumed the fact proved without any evidence.

I think that justice was done by the jury, that the re-- versal of the judgment of the justice was erroneous, and that the judgment of the county court should be reversed, and that of the justice affirmed with (double) costs.

Bockes, J., dissented.

A motion made for leave to go to the court of appeals was denied.

Bockes, J., dissenting.