---

### In re RUTHERFORD'S ESTATE.

(Surrogate's Court, New York County. December 18, 1914.)

1. DOMICILE (§ 10*)—EVIDENCE—SUFFICIENCY.

In proceedings to appraise an inheritance tax, evidence *held* to show that the decedent was domiciled within the state at a period two years before his death.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. § 10.*]

2. DOMICILE (§ 1*)—EVIDENCE—HOME.

The fact that a person lived at various hotels within the city, instead of in a private dwelling house, does not preclude him from regarding the city as his home, which is not a term of art, but of fact.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. DOMICILE (§ 4*)—CHANGE OF DOMICILE—INTENTION.

Where a resident of New York was given a house in Vermont, which he visited on two occasions, and thereafter formed an intention to make that state his home, but never went there again, he did not acquire a domicile in Vermont, since the intention to change did not concur with the fact of residence.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 5–23; Dec. Dig. § 4.*]

Proceedings to determine the inheritance tax in the estate of Henry Rutherford. Appraiser directed to appraise the tax as one against the estate of a resident of the state.

Charles Fox, of New York City, for executor.

Adolph Sonnenthal, of New York City (William Law Stout, of New York City, of counsel), for state comptroller.

FOWLER, S. This is an application by the state comptroller to have the surrogate determine the controverted question of decedent's domicile at the time of his death. The determination of this question is material and necessary in the transfer tax proceeding now pending,

because, if the decedent did not have his domicile in this state at the time of his death, his intangible personal property is not subject to a tax under the provisions of our Transfer Tax Law.

[1] The parties to this proceeding have stipulated that the evidence taken before the appraiser may be considered by the surrogate in determining the question of domicile in the same manner and to the same effect as if the testimony had been taken before the surrogate. From such evidence it appears that Henry Rutherford died at the Hotel Astor, in the city of New York, on the 25th of February, 1913. The record does not disclose his domicile of origin. He had no children. The papers before me do not give the date of his wife's death, but certain statements therein contained would seem to indicate that she died before he began to live at hotels in the city of New York.

There is no evidence as to his residence or domicile during his married life. Charles K. Phipard, a member of the firm of bankers and brokers with which the decedent transacted business, and who is also an executor under decedent's will, testified that he had known the decedent for about 40 years; that he first became acquainted with him in New York City, and that prior to the month of November, 1911, he always claimed New York as his residence. Dr. Steele, a physician, testified that he knew the decedent socially and had attended him professionally for about 10 years prior to his death, and that during that time the decedent had lived in hotels in New York City. Another physician testified that he had treated him at intervals for about 5 years prior to his death, and that during all that time he lived at hotels in this city. There is no evidence that he had a home or a residence in any other state during that time. He engaged rooms at the Plaza Hotel, New York City, on June 14, 1910, and remained there until September 1, 1911. He went to the Astor Hotel in September, 1911, and remained there until he went to the Waldorf-Astoria on November 21, 1911. He remained at the Waldorf until March 20, 1912, when he returned to the Astor, and remained at the latter hotel until the date of his death. When registering at the hotel he wrote in the column marked "Residence" the words "New York." At the Plaza Hotel his bills were rendered and paid monthly. He usually occupied two rooms in each of the hotels at which he stayed, but during part of the year 1912 he occupied a suite of five rooms at the Astor. On June 14, 1911, he rented two safe deposit boxes from the Safe Deposit Company of New York and retained them until his death. He also rented a room from the New York Storage Warehouse Company, and had a bank account in this city.

Decedent was executor under the will of his brother, John Rutherford, and in his oath of office, verified April 4, 1911, he stated, "I am a resident of the Hotel Plaza, in the borough of Manhattan, city and state of New York." In the petition for the probate of the will of his brother, verified by the decedent on the 30th of March, 1911, he stated that he resided at the Hotel Plaza, in the borough of Manhattan, city of New York. He was executor under the will of his sister, Janet Rutherford Marshall, and in executing the oath of executor he stated on the 6th of November, 1911, that he was "a resident of the Hotel

Waldorf, in the borough of Manhattan, city and state of New York." In the petition for the probate of her will, verified 6th of November, 1911, he stated that he resided in the borough of Manhattan, city and state of New York. In his will, which was executed on the 23d day of November, 1911, he described himself as "at present residing in the city, county, and state of New York."

He was assessed for personal taxes in New York City for the year 1911, and he paid the tax in 1912. He did not vote in New York City; in fact, he never voted anywhere during his life. He was not engaged in any business, nor did he practice any profession. These facts would seem to indicate that up to and including the year 1911 decedent had his domicile in this state. He had no home elsewhere than in this city.

[2] The fact that he lived at hotels here instead of at a private dwelling house or an apartment did not preclude decedent from regarding this city as his home. As I pointed out in my judgment in Matter of Wise, "home" is not a term of art. It is a fact. 84 Misc. Rep. 665, 146 N. Y. Supp. 789. By custom of this country hotels in this city are very often the "homes" of a large number of people, who for various reasons prefer living in such public places to the burdensome occupation of private dwellings or apartments. Such preference does not deprive a person of the right to regard the hotel at which he is living as his "home," nor does it prevent him from acquiring a domicile here. Such a person is not a sojourner at the hotel; he lives there colloquially. If such a person have no other home, the hotel at which he lives becomes his abiding place, or the place of his residence —in short, his home. In a more comprehensive way, decedent's home while at a hotel was in New York, although the particular hotel at which he lived might be vacated for another at any time; it may have been a temporary home, or it may to some extent have had the characteristics of comparative permanency. As Henry Rutherford lived in New York City for about nine years prior to December, 1911, and did not have a home or residence in any other state, and did not live in any other state during that period, except a few weeks in the summer of each year, I will find that for taxing purposes he had his domicile in the state of New York in the year 1911. While that state was his domicile in 1911, whether it was a domicile of origin also I am not informed. It was in any event his domicile of choice.

[3] The executors do not contend that he was domiciled in any other state than New York prior to 1912, but they do contend that in the latter year he acquired a new domicile of choice in Vermont. The facts apparent bearing on this contention are as follows:

Decedent's brother, John Rutherford, owned a house at Grand Isle, Vt., which he used as a summer residence. Henry Rutherford usually spent a week or two every summer at the home of his brother in Grand Isle. John Rutherford died on February 7, 1911, and devised the house at Grand Isle to his brother Henry. Some time during the summer of 1911 Henry authorized an agent at Grand Isle to place the property in the market for sale. The furniture and pictures were packed and held at the house awaiting their final disposition. Henry

went to Grand Isle during the summer of 1911 and remained there about one week. He slept at his own house, but took his meals at a neighboring hotel. He then returned to New York, and did not again visit Grand Isle until July, 1912, when he remained there one night. In August, 1912, he instructed his agent to withdraw the place from the market, and ordered that the furniture be unpacked, and that the house be repaired and made fit for occupancy. He then stated that he intended to make Grand Isle his home.

This is proper evidence of animus. Decedent did not, however, visit the place again during his life. In September, 1912, he received a notice of assessment for personal taxes in New York City, and complained to his brokers that the assessment was too high and that he would not pay it, as he was a resident of Grand Isle, Vt. An affidavit was prepared by an employé of the firm, in which the decedent stated that he was a resident of Grand Isle, Vt., and not liable to taxation in this city. Prior to this time he informed his employé in Grand Isle that he was willing to be assessed there at the same amount as his brother, namely, $40,000. He also stated in November, 1912, when making a contract for the construction of a yacht, that he resided at Grand Isle, Vt. On February 8, 1913, he described himself in a public document as "now residing at Grand Isle, state of Vermont."

From all these statements it is apparent that some time during the summer of 1912 the decedent decided that he would make Grand Isle his home; but from the time that he manifested his intention until the date of his death he never actually resided there. His quondam residence remained to all intents. In Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950, the court said:

"Residence is necessary, for there can be no domicile without it. In order to acquire a new domicile, there must be a union of residence and intention. * * * Intention without residence is of no avail."

In Dupuy v. Wurtz, 53 N. Y. 556, the court said:

"Intention alone will not do, but intention and residence taken together constitute a change of domicile. There must be a change of residence, together with an intention to abandon the former domicile."

In U. S. Trust Co. v. Hart, 150 App. Div. 413, 135 N. Y. Supp. 81, affirmed 208 N. Y. 617, 102 N. E. 1115, the decedent, for the purpose of getting his baggage through the port of New York, stated that he was a resident of France. In his will and in some other papers he stated that he was domiciled in the United States and temporarily residing in France. The court held that he was domiciled in the state of New York.

In Matter of Wise, 84 Misc. Rep. 663, 146 N. Y. Supp. 789, I had occasion to examine the question of domicile at some length, and there stated the general principle that:

"A man's domicile of origin or domicile of choice, once established, is presumptively retained until it is shown affirmatively that it was either abandoned or changed by him. In order to constitute such a change [for taxing purposes], both animus, or intent, and factum, residence, must concur."

While the decedent doubtless intended to make Grand Isle his home and to acquire a domicile in Vermont, he never, for the purposes of

the taxing act, completed the change of domicile once intended, and this because of his failure to establish a residence in Vermont or to reside at the house in which he had once intended to live at Grand Isle. I will therefore find that the former domicile of decedent continued, and that decedent at the time of his death had his domicile in New York, and not in Vermont.

The appraiser will proceed with the appraisal of the estate in accordance with this finding.