## Matter of the Estate of HENRY C. FRICK, Deceased.

(Surrogate's Court, New York County, September, 1921.)

**Transfer tax — domicile — when testator held to be a non-resident.**

Though domicile may exist without actual residence it can never exist without intention, and so long as intention to return to a domicile exists long continued absence therefrom is no indication of abandonment.

Where in a transfer tax proceeding it appears that decedent, who from 1879 until his death in 1919 maintained a home in Pittsburgh, Penn., had, in numberless written declarations, in conversations with friends, and statements under oath, expressed his intention to remain to the day of his death a resident of the state of Pennsylvania, and supporting facts amply sustain the burden of proof cast upon the executors to establish that he was a non-resident of the state of New York and completely destroy the statutory presumption arising from the fact that during the last two years of his life he dwelt in the city of New

York in excess of the period laid down by section 243 of the Tax Law, and proof of his intention to reside permanently in New York is utterly lacking, it must be held that he was a resident of Pittsburgh, Penn., at the time of his death.

*Dickinson* v. *Inhabitants of Brookline,* 181 Mass. 195, distinguished.

PROCEEDINGS relating to a transfer tax.

Guthrie, Bangs & Van Sinderen (William D. Guthrie, Victor Morawetz and Roger Lewis, of counsel), for executors.

Lafayette B. Gleason (John B. Gleason, of counsel), for State Comptroller.

FOLEY, S. In this proceeding, the question at issue is the domicile of the testator. I hold that he was a resident of Pittsburgh, Penn., and a nonresident of the state of New York.

Mr. Frick died on the 2d day of December, 1919. The record is most comprehensive in its narration of the life of the deceased, and counsel for both parties, with commendable thoroughness, have developed the most minute details of the career of Mr. Frick, his business interests, his financial activities, his travels and his presence at various places. Mr. Frick was born at West Overton, Penn., on December 19, 1849. That state was, therefore, the domicile of origin. He resided at various places in the state until 1879 when he established his home in Pittsburgh. In 1881 he was married there. In 1882 he purchased the property and built a residence thereon, known as " Clayton," at No. 7200 Penn avenue, in that city. Title to the property was in his wife. This house became the family home, all his children were born there, and it is claimed as his legal residence by the executors. It is not disputed that Pittsburgh was the domicile of decedent until 1904. When a very young man he became active in the coke and coal industry in western Pennsylvania. In 1882 he became associated

Surrogate's Court, New York County, September, 1921.    [Vol. 116.

in the steel business with Carnegie Brothers & Company, Limited. Through various consolidations his great steel and coke interests were finally merged in 1901 in the United States Steel Corporation. He was active in banking institutions, distilleries, railroads and in many other branches of business. His fortune at the time of his death amounted to approximately $92,000,000, most of which was accumulated in the state of his birth, through his business activities there. In 1902 he acquired a summer residence at Pride's Crossing, Mass., and up to the time of his death most of his summers were spent there. In 1905 he leased the Vanderbilt house at Fifty-first street and Fifth avenue, New York city, for a term of ten years. In the fall of 1914 he took possession of his new mansion situated at Seventieth street and Fifth avenue, this city. In the period of years between 1904 and 1919, he divided his time between Pittsburgh, Philadelphia, New York, Pride's Crossing and various summer and winter resorts. It appears that the time spent by him in New York continued to increase from year to year, but there still remained his fixed determination to regard his Pittsburgh dwelling as his home with occasional visits there to sustain this design. The record of the proceedings discloses an undeviating intention to remain to the day of his death a resident of the state of Pennsylvania. This intent is expressed in numberless written declarations, in conversations with friends, and statements made under the solemnity of an oath. These declarations were convincingly supported by his acts and conduct. He was taxed as a resident of Pennsylvania. In New York and Massachusetts he was taxed as a nonresident. He voted and registered in Pennsylvania, and in no other state. He visited Pittsburgh on the occasion of his last registration on October 30, 1919, about a month prior to

his death, and then stated that his length of residence in the state of Pennsylvania was sixty-nine years, and in the election district thirty-three years. He maintained a pew in a Pittsburgh church and was a member of many clubs and societies there. His Federal income tax returns, filed in the proper district in Pennsylvania, stated his residence to be No. 7200 Penn avenue, Pittsburgh. In the requisite qualifying affidavits as a director of the Mellon National Bank and Franklin National Bank of Pennsylvania, and of other institutions, he swore for several successive years, including 1919, that he was a resident of that state. An office for all his business activities was likewise maintained in Pittsburgh, and his large investments were managed there. In very many deeds, contracts and other papers, he described himself, without exception, as a resident of the city of Pittsburgh, Penn. His will was executed in Pittsburgh on June 24, 1915, and it was probated there. It appears from the testimony of the New York counsel who helped draft it in conjunction with an eminent member of the Pennsylvania bar, that Mr. Frick's expressed desire was that it be probated in his home state, and the testator described himself in it as ''a citizen of the Commonwealth of Pennsylvania and a resident of the City of Pittsburgh in said Commonwealth.'' In accordance with his wishes he was buried in Homewood Cemetery in Pittsburgh.

This array of declarations and supporting facts, together with others too numerous to recite here, amply sustain the burden cast upon the executors to establish nonresidence. The state tax commission claims that the facts of his residence in New York city for the greater part of many years compel the conclusion that he was a resident of this state. The commission invokes section 243 of the Tax Law, which

Surrogate's Court, New York County, September, 1921. [Vol. 116.

provides, " * · * * every person shall be deemed to have died a resident, and not a nonresident, of the state of New York, if and when such person shall have dwelt or shall have lodged in this state during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death; * * *. The burden of proof in transfer tax proceedings shall be upon those claiming exemption by reason of the alleged nonresidence of the deceased. * * * " In *Matter of Barbour,* 185 App. Div. 445, where the facts were very similar to this case, this provision was held to be simply a rule of evidence, and that it created a mere disputable presumption of residence which may be overcome by evidence to the contrary. The problem, therefore, is not arithmetical. Although Mr. Frick did live within the city of New York in excess of the period laid down by this section in the last two years of his life, the evidence recited above overwhelmingly destroys the statutory presumption.

The general rules applicable under the authorities in this state, and particularly in *Dupuy* v. *Wurtz,* 53 N. Y. 556, and *Matter of Newcomb,* 192 id. 238, 250, are as follows: " Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home * * *. In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail." *Matter of Newcomb, supra.* To effect a change of domicile there must not only be a change of residence, but an intention to abandon the former domicile and acquire another as the sole domicile. Intention only will not do it, but the two (*animus et factum*) taken together do constitute a change of domicile. *Dupuy* v. *Wurtz, supra.* See, also, Gleason

Misc.] Surrogate's Court, New York County, September, 1921.

& Otis Inheritance Taxation, 214; *Matter of Lydig,* 191 App. Div. 117.

Domicile may exist without actual residence, but it can never exist without intention. *United States Trust Co.* v. *Hart,* 150 App. Div. 413, 417, citing *de Meli* v. *de Meli,* 120 N. Y. 485. Nor is long continued absence from the domicile an indication of abandonment so long as the intention to return exists. Length of residence elsewhere does not effect a change. *Matter of Blumenthal,* 101 Misc. Rep. 83; affd., without opinion, 186 App. Div. 944; *Curtis* v. *Curtis,* 185 App. Div. 391; *Matter of Harkness,* 183 id. 396; *Matter of Mesa y Hernandez,* 172 id. 467; *People* v. *Platt,* 117 N. Y. 159; *Matter of Chadwick,* 109 Misc. Rep. 696. Here proof of Mr. Frick's intention to reside permanently in New York is utterly lacking. His home in Pittsburgh was maintained by a staff of servants up to the time of his death. The establishment of a separate dwelling in another state, and the relative size or magnificence of the various houses conducted by Mr. Frick are not tests of his change of domicile. If so, the establishment of a summer residence in Massachusetts in 1902, antedating the acquisition of his first New York residence, would have effected a change of domicile from Pennsylvania to Massachusetts. The maintenance of each of the independent dwellings in New York city and Pride's Crossing did not supplant, but paralleled the continuation of his domicile at Pittsburgh. Counsel for the tax commission gives full credit to Mr. Frick's honest belief that he was a resident of Pennsylvania. It is conceded also that no question of the evasion of the payment of a tax in New York is involved here. Indeed it appears that the transfer tax would be smaller in the event of a finding that the deceased was a resident of this state. Mr. Frick's generosity to the people of New York city is

typified in his will by the ultimate gift to " The Frick Collection " (a corporation) of the Fifth avenue building, the paintings and other objects contained in it, and a large endowment fund, aggregating in value over $30,000,000. I have disregarded the argument of the executors that this house was principally an art museum, and in a subordinate degree a dwelling. While the point is unimportant, the building must be regarded as a dwelling.

*Dickinson* v. *Inhabitants of Brookline,* 181 Mass. 195, strongly relied upon by the tax commission, is not applicable here. In that case the question was decided (as in all cases of domicile) as one of fact, and the jury's finding upon the evidence was sustained.

It is clearly apparent that Mr. Frick never abandoned his Pennsylvania domicile.

Ordered accordingly.