In the Matter of the Transfer Tax upon the Estate of JOHN LYON, Deceased.

(Surrogate's Court, Westchester County, December, 1921.)

Transfer tax — evidence — residence — presumption in favor of an original as against an acquired domicile — burden of proof — property of decedent as non-resident subject to tax — Tax Law, § 243, as amended by Laws of 1919, chap. 629.

By virtue of section 243 of the Tax Law (Laws of 1916, chap. 551, as amended by Laws of 1919, chap. 629), the burden of proof in a transfer tax proceeding is upon those claiming exemption by reason of the alleged non-residence of their decedent, which declares that " every person shall be deemed to have died a resident and not a non-resident of the state of New York if and when such person shall have dwelt

Surrogate's Court, Westchester County, December, 1921.    [Vol. 117.

or shall have lodged in this state during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death."

Decedent, who was born at Greenwich in the state of Connecticut in 1839, died in the month of July, 1920, at Port Chester, New York, where he had continuously resided with his family since January, 1900, having acquired real estate there by inheritance. He never resided elsewhere than at either of these two places, both of which are not far distant from the boundary line dividing the states of Connecticut and New York. He was made a freeman in Greenwich in 1861 and continued to exercise his communal relations in Connecticut until 1913, always attending and taking part in the town meetings. He never voted elsewhere and in more than four hundred deeds, mortgages and other papers recorded in Greenwich, in Westchester county and Kings county, N. Y., he was always mentioned and described as a resident of Greenwich and he declined to receive or execute papers in which he was otherwise described, and furthermore he protested his assessments in Port Chester. No attempt was made by the state tax commission, in a transfer tax proceeding, to controvert these facts, established by the executor. *Held,* that the burden laid upon the executor by the statute has been met by evidence abundant and convincing, indicating an undeviating determination on the part of decedent not to abandon his domicile of origin in the state of Connecticut, either in law or fact, and that domicile must govern in the administration of his estate.

A contention on behalf of the state tax commission that a residence of years in another state in conjugal relationship supplies the intent to change a person's domicile and in fact creates a new domicile of choice for him without the operation of his mind, is untenable under the decision in *Dupuy* v. *Wurtz,* 53 N. Y. 556–561.

The transfer tax proceeding remitted to the transfer tax appraiser in Westchester county, N. Y., to appraise the property of the decedent therein, as a non-resident under the provisions of section 243 of the Tax Law in force at the time of decedent's death.

TRANSFER tax proceedings.

Misc.] Surrogate's Court, Westchester County, December, 1921.

Lafayette B. Gleason (John B. Gleason, of counsel), attorney under designation of State Tax Commission, as in estate of non-resident.

Francis A. Winslow (Charles C. Fenno, of counsel), for State Tax Commission.

T. Ludlow Christie (Arthur R. Wilcox, of counsel), for executor.

Carlos S. Holcomb, for Tax Commission of State of Connecticut.

SLATER, S. In this taxable transfer proceeding the domicile of the decedent must be determined. It appears that an application was made by the executor to the surrogate of New York county for the appointment of an appraiser, upon the theory that the decedent was a non-resident, owning property in that jurisdiction. After hearing had before the transfer tax appraiser, it was reported by him to the surrogate, that a question relating to residence was primarily involved. Upon a hearing before the surrogate of New York county, the completed proceeding was transferred to this court for determination, by order dated October 25, 1921 (116 Misc. Rep. 640), upon the ground that, in the event it was found that the decedent was a resident of Westchester county, the court's jurisdiction would be ousted by force of section 45 of the Surrogate's Court Act, formerly section 2515 of the Code of Civil Procedure and section 228 of the Tax Law.

Upon the hearing before me, counsel stipulated that the testimony on the subject of residence already taken in New York county may be received by this court with the same force and effect as if the proceeding had been originally instituted in the county of Westchester.

Surrogate's Court, Westchester County, December, 1921. [Vol. 117.

An inheritance tax is imposed upon the transfer of property within the state where the transfer takes place, which is the place of the domicile of the decedent at the time of his death. The term "resident," section 47 of the Decedent Estate Law, designates a person domiciled in the state, and in legal phraseology is synonymous with domicile. *People* v. *Platt,* 117 N. Y. 159; *Matter of Rooney,* 172 App. Div. 274; *Matter of Martin,* 173 id. 1, 3; *Matter of Harkness,* 183 id. 396; *Matter of Lydig,* 191 id. 117; *Matter of Blumenthal,* 101 Misc. Rep. 83; affd., 186 App. Div. 944; *Matter of Martin,* N. Y. L. J. Dec. 28, 1916; *Matter of Robitaille,* 78 Misc. Rep. 108; *Matter of Brooks,* 105 id. 559. In ascertaining the domicile of the decedent, two considerations must be kept in mind; that every person must have a domicile somewhere; that a person can have only one domicile for one purpose, at one and the same time. Everyone has a domicile of origin which he retains until he acquires another. *De Meli* v. *De Meli,* 120 N. Y. 485; *Dupuy* v. *Wurtz,* 53 id. 556, 562; *United States Trust Co.* v. *Hart,* 150 App. Div. 413; affd., 208 N. Y. 617; *Matter of James,* 221 id. 256; *Abington* v. *North Bridgewater,* 23 Pick. 170, 177; Jacobs Domicil, ¶ 114. Where the facts conflict, the presumption is strongly in favor of an original, as against an acquired domicile. A change of domicile is a proceeding of a serious nature. It determines his civil and political rights and privileges, duties and obligations. It furnishes the rule for the disposal of property.

Every case involving the question of domicile must stand upon its own peculiar circumstances, must be bottomed on its own facts. Consequently, we must look to the leading cases of this state to test the question of domicile arising in the instant case.

Before we attempt to solve the legal question as to

Misc.]    Surrogate's Court, Westchester County, December, 1921.

whether the decedent acquired a new domicile of choice, either forced by law, or voluntary, let us first consider and decide whether it can be said that he abandoned his domicile of origin.

The facts are not disputed. John Lyon, farmer, died July 12, 1920, at Port Chester, N. Y. Since January, 1900, he had resided continuously at Port Chester with his wife and children. His domicile of origin was in Greenwich, Conn., where he was born in the year 1839. He was a descendant of one of the first settlers. The decedent never resided elsewhere than, first, on the farm where he was born, situate on Weaver street in Greenwich, Conn., and later on a farm located on King street, in the village of Port Chester, N. Y. These two places of residence, in an air line are about one and one-half miles apart, by the highway they are about three miles distant, with about an equal distance of either house from the boundary line dividing the states of Connecticut and New York. For convenience in transacting business in Greenwich, with present day conditions of highway and travel, either of these abodes offers equal opportunity.

The decedent married in Greenwich and reared his family there. Upon coming into a large inheritance, consisting of several farms and a large personal estate, he removed in 1900 to one of the farms on the then outskirts of Port Chester. The house upon this farm had been occupied by his deceased relative. It was a furnished modern farmhouse, containing conveniences. He visited his sister who lived in the old homestead on Weaver street until her death in 1910, sometimes passing the night, since which time the Weaver street house has been occupied by a caretaker. The decedent until his death worked the Weaver street farm with hired men and visited it several times a week. He was generally found there

13

Surrogate's Court, Westchester County, December, 1921.  [Vol. 117.

by his friends and attorneys.  He was made a freeman in Greenwich in March, 1861, and continued to exercise his communal relations in Connecticut until 1913, always attending and taking part in town meetings. He never voted elsewhere.  *Paddack* v. *Lewis,* 59 App. Div. 430, 434; affd.,.179 N. Y. 591; *City of New York* v. *Beers,* 163 App. Div. 495.  He was a director in two banks, one in Greenwich and one in Port Chester, from 1910 to 1913, inclusive, and upon qualifying as such director, had signed and sworn to solemn oaths in successive years that he was a resident of Greenwich.  Deeds, mortgages and other papers, some four hundred and sixty-six in number, recorded in Greenwich, in Westchester county and Kings county, N. Y., show he was always mentioned and described as a resident of Greenwich.  In fact, when such papers were presented for his signature, or his acceptance, if he was otherwise described, he repudiated them and declined to receive them, or to execute them.

In an affidavit verified August 21, 1900, submitted to the assessors of the town of Rye, the decedent states: " I am not now, and never have been, and was not between May 1st and July 1st, 1900, a resident of this Town, or of the County of Westchester.  My residence is now, and always has been in the Town of Greenwich, State of Connecticut, and that residence I have never surrendered and have never taken up residence elsewhere  *  *  *.  Although at present living at King Street in the Village of Port Chester, Town of Rye, I have not intended to make it my residence or to surrender my residence in the Town of Greenwich.  Having never been a resident of the Town of Rye, I object to the personal assessment mentioned.''

In December, 1909, in relation to taxes in New York city, he swore that he was and still is a resident of

Greenwich and has been such resident for many years. In certain tax proceedings against the village of Port Chester in July, 1918, he swore that he was a resident of Greenwich. In Port Chester he was taxed as a non-resident. In Connecticut he was taxed as a resident and made a return upon a resident blank. *De Meli* v. *De Meli,* 120 N. Y. 485, 491. His Federal income tax report was filed at Hartford, Conn., upon a resident form of blank, describing himself as a resident of Connecticut. From the testimony of his Connecticut attorney, it appears that he stated: " He had acquired property in Port Chester by inheritance, and there was a house over there and he was going to live there until he could dispose of the property, that he had no intention of changing his legal residence." That " the decedent said, the question of residence was a question of intent. If a man had a domicile in one place because he actually moved into the other State, he would not lose his residence until there was a change of domicile, that he was so advised by counsel." In his will dated March 31, 1913, he is mentioned as of Greenwich. The will was probated there July 30, 1920. *Matter of Mesa y Hernandez,* 172 App. Div. 467; affd., 219 N. Y. 566. Witnesses testified that he said to them in 1900, and later, that he " never intended to change his residence; that the motive in living in Port Chester was to occupy part of his inheritance and attempt to market it; that he spent a large part of his time in Greenwich." He kept his securities in a safe deposit vault in Greenwich. John Lyon was a Connecticut man by birth, tradition and by long years of residence. Several of the evidentiary facts here related were present in *Matter of Morgan,* 176 App. Div. 909, as stated in *Matter of Harkness,* 183 id. 396, 407.

In reviewing at length the multitude of evidence

Surrogate's Court, Westchester County, December, 1921.    [Vol. 117.

offered, both oral and written declarations, it is found that in every formal act of his life since 1900, where it became necessary for him to state his domicile, he invariably claimed it as the state of Connecticut, and not New York. Any of these recited acts, or declarations, standing alone may be of slight importance, none are conclusive, but grouped together, create the highest evidence of unequivocal acts, conclusively proving an intent to keep the domicile of origin. Together they are abundant and are an unvarying index of his intention. The proven acts are clearly contradictory of any intention to abandon his Connecticut domicile. These facts must be accepted as determinative of his intent. *City of New York* v. *Beers,* 163 App. Div. 495..

It may be said that prior to 1916 the burden of proof rested upon the party alleging a change of domicile. *Dupuy* v. *Wurtz,* 53 N. Y. 556, 562; *Matter of Newcomb,* 192 id. 238; *People ex rel. Blocher* v. *Crowley,* 21 App. Div. 304; affd., 155 N. Y. 700; *Matter of Gad,* N. Y. L. J. April 5, 1916; *Matter of Brooks,* 105 Misc. Rep. 559; *Matter of Horton,* 175 App. Div. 447; *Matter of Lydig,* 191 id. 117; *Matter of Tallmadge,* 109 Misc. Rep. 696. It may be that the burden still rests upon the party asserting another domicile. But, be that as it may, let us assume that, upon the authority of *Matter of Barbour,* 185 App. Div. 445; affd., 226 N. Y. 639, the burden of an intention to abandon a domicile of origin, which formerly rested upon those who assert it, no longer obtains in this state in a taxable transfer case (*Matter of Frick,* 116 Misc. Rep. 488, 491) by reason of section 243 of the Transfer Tax Law, being chapter 551 of the Laws of 1916, as amended by chapter 629 of the Laws of 1919, which says: " * * * every person shall be deemed to have died a resident and not a non-resident of the

state of New York if and when such person shall have dwelt or shall have lodged in this state during and for the greater part of any period of twelve consecutive months in the twenty-four months next preceding his or her death * * *. The burden of proof in transfer tax proceedings shall be on those claiming exemption by reason of the alleged non-residence of the deceased * * *." This section was construed in *Matter of Barbour, supra,* as creating only a disputable presumption of residence, which may be overcome by the proof of the case indicated by the acts, conduct, and statements as to the intent of the decedent.

The burden laid upon the executor in the instant case by statutory law, in my opinion, has been met, overcome and destroyed by the evidence upon the record. It is abundant and convincing. It all indicated an undeviating determination — a plain intent. The cases of *Dupuy* v. *Wurtz,* 53 N. Y. 556, and *Matter of Newcomb,* 192 id. 238, 250, are the leading and foundation cases upon this subject in the state. Judge Rapallo in *Dupuy* v. *Wurtz, supra,* in referring to the elementary principles governing questions of domicile, says: " To effect a change of domicil for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicil, and acquire another as the sole domicil. Residence alone has no effect *per se,* though it may be most important, as a ground from which to infer intention. Length of residence will not alone effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicil. (*Hodgson* v. *De Beauchesne,* 12 Moore P. C. 283, 328; *Munro* v. *Munro,* 7 Cl. & Fin. 877; *Collier* v. *Rivaz,* 2 Curteis, 857; *Aikman* v. *Aikman,* 3 McQueen, 855, 877.) This rule is laid down with great clearness in the case of *Moorhouse* v. *Lord* (10 H. L. 283, 292), as

Surrogate's Court, Westchester County, December, 1921.  [Vol. 117.

follows: Change of residence alone, however long continued, does not effect a change of domicil as regulating the testamentary acts of the individual. It may be, and is, strong evidence of an intention to change the domicil. But unless in addition to residence there is an intention to change the domicil, no change of domicil is made. And in *Whicker* v. *Hume* (7 H. L. 139) it is said the length of time is an ingredient in domicil. It is of little value if not united to intention, and is nothing if contradicted by intention. And in *Aikman* v. *Aikman* (3 McQueen, 877) Lord Cranworth says, with great conciseness, that the rule of law is perfectly settled that every man's domicil of origin is presumed to continue until he has acquired another sole domicil with the intention of abandoning his domicil of origin; that this change must be *animo et facto,* and the burden of proof unquestionably lies upon the party who asserts the change." And again (at p. 569): "All the authorities agree that to effect a change of domicile, there must be an intention to do both " (abandon and acquire), and again (at p. 570): "A mere declaration of an intention not to return is not conclusive as to change of domicile." Judge Vann in *Matter of Newcomb, supra,* 192 N. Y. 250, states the law to be as follows: " Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile.

" The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change. The question is one of fact rather than law, and it frequently depends upon a variety of circum-

stances, which differ as widely as the peculiarities of individuals. Less evidence is required to establish a change of domicile from one state to another than from one nation to another. In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail. Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect. *Uno solo die constituitur domicilium si de voluntate appareat.* Residence is necessary, for there can be no domicile without it, and important as evidence, for it bears strongly upon intention, but not controlling, for unless combined with intention it cannot effect a change of domicile. (*Dupuy* v. *Wurtz,* 53 N. Y. 556, 561; *The Venus,* 8 Cranch, 253, 278; *Carey's Appeal,* 75 Penn. St. 201, 205; Wharton's Conflict of Law [2d ed.], 21, 56, 66.) There must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration. The subject is under the absolute control of every person of full age and sound mind who is free from restraint, unless it may be that the domicile of a wife is controlled by that of her husband as long as she lives with him. (Story's Conflict of Law [7th ed.], § 46.) Subject to the qualifications named every human being may select and make his own domicile, but the selection must be followed by proper action. Motives are immaterial, except as they indicate intention. A change of domicile may be made through caprice, whim or fancy, for business, health or pleasure, to secure a change of climate, or a change of laws, or for any reason whatever, provided there is an absolute and fixed intention to abandon one and

Surrogate's Court, Westchester County, December, 1921.    [Vol. 117.

acquire another and the acts of the person affected confirm the intention. (*McConnell* v. *Kelley,* 138 Mass. 372.) No pretense or deception can be practiced, for the intention must be honest, the action genuine and the evidence to establish both, clear and convincing, The *animus manendi* must be actual with no *animo revertendi.* A temporary residence for a temporary purpose, with intent to return to the old home when that purpose has been accomplished, leaves the domicile unchanged, but even if the residence was begun for a temporary purpose, intention may convert it into a domicile. When a new domicile has been actually acquired it does not necessarily revert, even if not followed by continuous residence. There may be many absences from the new place and protracted sojournings in the old, unless intention and residence unite again, when still another change of domicile is effected.''

These principles, so clearly and succinctly asserted in these two leading cases, are affirmed and restated by Mr. Justice McLaughlin, now of the Court of Appeals, in *United States Trust Co.* v. *Hart,* 150 App. Div. 413; affd., 208 N. Y. 617. There the court says: '' The fact that he resided in Paris most of the time from 1880, while important to be considered, certainly is not controlling, because domicile may exist without actual residence, but never without intention. (*de Meli* v. *de Meli,* 120 N. Y. 485.)'' Residence means living in a particular locality, but domicile means living in that locality *with intent* to make it a fixed and permanent home. In order to acquire a new domicile, there must be a *union of residence and intention.* Residence without intention, or intention without residence, is of no avail, etc. *Matter of Roberts,* 8 Paige, 519; *Cruger* v. *Phelps,* 21 Misc. Rep. 252,

261; 19 C. J. 393; *Duke* v. *Duke,* 70 N. J. Eq. 135; *Penfield* v. *Chesapeake R. Co.,* 134 U. S. 351, 357.

Residence and intention, *animus et factum,* go hand in hand. They must be both present to create the change of domicile. An intention to abandon the former domicile must appear. Either residence alone, or intent alone, is not sufficient. Gleason & Otis Inheritance Tax, p. 214; *Matter of Lydig,* 191 App. Div. 117; *Matter of James,* 221 N. Y. 242, 256; *Matter of Frick,* 116 Misc. Rep. 488; 19 C. J. 423, n. 39; *Plant* v. *Harrison,* 36 Misc. Rep. 649; *Frost* v. *Bristbin,* 19 Wend. 11. The naked residence in itself amounts to nothing, unaccompanied with evidence of the *animus. Isham* v. *Gibbons,* 1 Bradf. 69, 89. Long continued absence from the domicile is not an indication of abandonment so long as the *intention* to return exists. The length of residence elsewhere does not affect the change. *Matter of Blumenthal,* 101 Misc. Rep. 83; affd. without opinion 186 App. Div. 944; *Curtis* v. *Curtis,* 185 id. 391; *Matter of Harkness,* 183 id. 396; *Matter of Mesa y Hernandez,* 172 id. 467; *People* v. *Platt,* 117 N. Y. 159; *Matter of Chadwick,* 109 Misc. Rep. 696; *Matter of Frick, supra; Ætna National Bank* v. *Kramer,* 142 App. Div. 444. Mr. Justice Jenks of the Appellate Division of the second department in *Webster* v. *Kellogg Co.,* 168 App. Div. 443, also restates these principles.

We must gather a dead person's intention from his acts, his solemn statements and his conduct. It is a question of fact, and it is the court's duty to pass upon the facts as well as the law. Intention may be proved just as any other fact is proved by any relative evidence. *Matter of Seymour,* 107 Misc. Rep. 330.

Upon this point, the court in *Dupuy* v. *Wurtz,* says (at p. 562): '' With respect to the evidence necessary

to establish the intention, it is impossible to lay down any positive rule.  *  *  *  In passing upon such a question, in view of the important results flowing from a change of domicil, the intention to make such a change should be established by very clear proof." (Cases cited.) " The intention may be gathered both from acts and declarations. Acts are regarded as more important than declarations, and written declarations are usually more reliable than oral ones."

And again, in *Matter of Newcomb, supra,* p. 252: " While acts speak louder than words, the words are to be heard for what they are worth." In *United States Trust Co.* v. *Hart,* 150 App. Div. 413, 417, referring to the character of evidence, the court says: " One's acts are always much more satisfactory as evidence of intention than his declarations, and *written declarations* are considered stronger than oral ones." " Declarations are primarily valuable as expressions of intention, but they are not controlling and are subject to be overcome by ' other and more reliable indications of the true intention.' *  *  *  ' The time, occasion and manner of making them, the reasonableness and consistency with themselves and with the other proven facts in the case, the presence or absence of the suspicion of sinister purpose in making them enter materially into the estimation of their value.' " *Plant* v. *Harrison,* 36 Misc. Rep. 649, 669; Jacobs Domicil, ¶¶ 454, 455; *Sherwood* v. *Judd,* 3 Bradf. 267; *Peterson* v. *Chemical Bank,* 32 N. Y. 21; *Isham* v. *Gibbons,* 1 Bradf. 69; *Matter of Zerega,* 20 N. Y. Supp. 417; *Hitt* v. *Crosby,* 26 How. Pr. 413, 416.

In *Cruger* v. *Phelps,* 21 Misc. Rep. 252, 264, Justice Chase, later of the Court of Appeals, writes words that might well be used in the instant case. He says: " In deeds and other instruments executed by and to

Misc.] Surrogate's Court, Westchester County, December, 1921.

him, there is a uniform and unvarying reference to his residence in the city of New York. This statement is made in instruments prepared and executed in France and other parts of Europe, as well as in instruments prepared and executed in this country. Such designation in these papers was not the work of a draftsman, but the work of the testator. They present a continuous unequivocal and consistent statement of intention in solemn instruments, covering all the period in question. These statements were made when there was no controversy, and cover such a long period of time as to preclude the idea of their being made with reference to property rights, and they were so deliberately and frequently made as to preclude the idea of carelessness or inadvertence. To hold in the face of all these declarations that Mr. Pell intended to change his legal domicile is to brand him as a deliberate falsifier.''

In *Matter of Cleveland,* 28 Misc. Rep. 369, the decedent had resided abroad for thirty-two years. Surrogate Varnum says: '' It is clear, from the evidence, that the testatrix preferred living abroad after her husband's death for many reasons of habit, personal comfort and health, but I find nothing to satisfy me that she had any intention of giving up her residence and domicile in New York, even though she thought it probable that she might never return there to live, * * *.'' *Matter of Brant,* 30 Misc. Rep. 16.

The facts in the present case fully supply and indicate the decedent's intention to keep his domicile of origin in Greenwich, Conn. The acts are inconsistent with an intention on his part to change his domicile. The overt acts showing intent to keep the domicile of origin, with the utter lack of evidence showing an intent to abandon it, are not overcome or outweighed by mere residence here.

The state tax commission strongly contends, as they have argued in other cases involving the question of domicile, that a residence of years in another state in conjugal relationship will supply the intent to change a person's domicile and, in fact, does create a new domicile of choice for him without the operation of his mind. That sometime after January, 1900, some unspecified time, the decedent changed his domicile to New York state. One day is recognized " sufficient, provided the *animus* exists." *Craigie* v. *Lewin,* 3 Curt. 435. Domicile by operation of law is that domicile which the law attributes to a person independent of his own intention. It is consequential and ordinarily results from domestic relations. The removal of the family is not conclusive of a change of domicile, when it is evident by unequivocal acts that the intention is not to make the change. The domicile of the wife and children follow that of the husband. *Matter of Bye,* 2 Daly, 525, 529. I fail to find, nor has my attention been directed to any reported case in the higher courts of this state, which has applied this principle to overcome the exercise of volition and intent.

The state tax commission makes no attempt to controvert the facts established by the executor, and indeed, offered no evidence in contradiction. It relies upon its contention as to the law, that an enforced change of domicile by the very act of long continued residence in conjugal relationship may be created for a person. To paraphrase Justice McLaughlin's statement in *United States Trust Company* v. *Hart, supra,* and apply it to the instant case: " Unless one's domicile can be changed for him without his intention, or in spite of his intention, he must be considered at the time of his death as domiciled in Connecticut." Counsel attempts to change the decedent's domicile in spite

of his expressed intention.  Upon the oral argument, I understood the contention to be, that the residence in New York for many years supplanted the intent and compelled the conclusion in law that he was domiciled in this state; that a residence could not legally continue to exist by intention alone, when a person deliberately lived elsewhere.  I agree with the learned surrogate of New York county (*Matter of Frick, supra*) that such a contention is untenable.

" Intent " is still one of the cardinal principles and one of the tests to be applied in ascertaining the domicile of a person.  Webster's Dictionary says " intent " means " a determination to do a certain thing." Therefore the combination of residence and intent calls for something to be done by a combined act — the physical presence of the person, coupled with the intent, a product of the mind.  *Yale* v. *West Middle School District,* 59 Conn. 489.  Justice Thomas, in *Grim* v. *Lehigh Valley Coal Co.,* 171 App. Div. 493, speaking of intent, says: " The ascertainment of intention is usually a delicate process." If the theory of the law contended for by the learned counsel for the commission is correct, then the union of residence and intent is destroyed, because the law will then take away the intent which is created by the mind, and a physical residence will supply that element which the law, as I understand it, has stated, is necessary to create a change in domicile.  *Animus,* it is claimed, may be presumed as matter of law from residence.

The cases in this state do not support the argument that continued residence will after a period cause the word " intent " to be stricken out of the legal definition of how a domicile may be changed, as such definition has been declared in *Dupuy* v. *Wurtz, supra. Matter of Newcomb, supra,* 251, says: " This discussion shows what an important and essential bearing

intention has upon domicile. It is always a distinct and material fact to be established. Intention may be proved by acts and by declarations connected with acts, but it is not thus limited when it relates to mental attitude or to a subject governed by choice." The legal argument or statement of views of Surrogate Fowler in *Matter of Grant,* 83 Misc. Rep. 257, 263; affd., 166 App. Div. 921, and in *Matter of Green,* 99 Misc. Rep. 582–607, is submitted by the tax commission in support of this doctrine. It is supported by Westlake, the publicist. The principle, however, has not been followed in this state and even the learned surrogate in the *Green* case (at p. 606) says: " It is, however, urged by the state that Mrs. Green's long continued absence from her Vermont home, and her protracted sojourns in New York are conclusive of a change of domicil without proof of her *animus.* But in *Dupuy* v. *Wurtz,* 53 N. Y. 556, 561, this proposition was, I think, denied, both in substance and in principle."

In *Matter of Rutherford,* 88 Misc. Rep. 414, affd., 171 App. Div. 900, Surrogate Fowler held that intention and residence were *concurrent.* See, also, *Matter of Wise,* 84 Misc. Rep. 663. In *Matter of Long,* 167 N. Y. Supp. 1023, Surrogate Fowler, in speaking of the evidence, said: " He (the decedent) had not objected to personal tax assessments in this city and he had not exercised the right of franchise in Pennsylvania. These are controlling factors upon the question of *intent.*" In the instant case John Lyon protested his assessments in Port Chester and voted in Greenwich, Conn.

In *Matter of Curtis,* 178 N. Y. Supp. 286, the learned surrogate again says: " On the other hand, a domicile once acquired is not always affected by nonresidence if the *intent* is to retain the old domicile. A

Misc.] Surrogate's Court, Westchester County, December, 1921.

*person intending to retain his old domicile may reside almost indefinitely out of the locus of such domicile.* But whether he can retain a residence when he lives elsewhere is another question. \* \* \* A *sworn* statement is superior to the idle gossip.''

As these two decisions are in point of time subsequent to the *Green* case, it cannot be well said by counsel to the commission, that even Surrogate Fowler, in 1919, was inclined to follow the principle that supplants *animo et facto* by *animus* merely.

The fact of a '' long residence abroad '' was urged and considered in *Dupuy* v. *Wurtz, supra.* The doctrine was also urged upon Surrogate Bradford (1849) in *Isham* v. *Gibbons,* 1 Bradf. 69, 89. The learned counsel cites *Chaine* v. *Wilson,* 1 Bosw. 673, in support of the proposition. That being a case dealing with residence in reference to the law of attachment, it has no significance. *De Meli* v. *De Meli, supra; Irwin* v. *Raymond,* 58 Misc. Rep. 319. Chief Justice Holmes in *Dickinson* v. *Brookline,* 181 Mass. 195, adopted the legal principle, that '' a long continued and non-intermittent residence in one place may conclusively negative in law a pronounced, or declared intention to retain a domicile in another place to which the declarant, or ' *de cujus* ' never resorts.'' This, however, at most is an established exception to a general rule which has not fastened itself upon the law of this state. *Matter of Frick,* 116 Misc. Rep. 488. In the *Dickinson* case, the question of domicile was decided as one of fact by the jury's finding upon evidence submitted. Even in that case the court said: '' Of course, if hereafter, upon the recurrence of this question, Mr. Dickinson is prepared to state that he never has given up his expectation of actually living in Cohasset, while that testimony would not take away the town's right to go to

the jury, it may lead to a different result." But in] *Babcock* v. *Slater*, 212 Mass. 434, the court says: " To establish a change of domicile, fact and intent must concur." In *National City Bank* v. *Hotchkiss*, 231 U. S. 50, 56, Justice Holmes writing, says: " For instance, apart from possible exceptions, a man cannot retain a domicil in one place when he has moved to another and intends to reside there for the rest of his life, by any wish, declaration or intent inconsistent with the dominant facts of where he actually lives and what he actually means to do. *Dickinson* v. *Brookline*, 181 Mass. 195."

If this principle is to be adopted by our courts, it could be applied in the instant case. The fact of the decedent residing with his family in New York state for twenty years is not denied. But, our courts have not yet applied this rule of law so strongly contended for by the learned counsel for the state tax commission. In *Plant* v. *Harrison, supra,* Justice Leventritt, in a very elaborate opinion, upon the question of domicile, referring to the contention that mere physical presence in the domicile elected as abandoned, will cause a revivor of the domicile of origin, says: " Such a thesis, I take it, would be quite revolutionary of the entire law of the change of domicile and supplant the inseparable *animo et facto* by *animo* merely. The mere statement contains its own refutation." The learned counsel of the state tax commission in *Matter of Gad, supra,* contended for the reverse of his argument in the instant case, and succeeded in having the court agree with him that a nonresidence of twenty-two years was of no avail, and was not in itself sufficient to create a change in domicile, overcome as it was by evidence of far less probative force than exists in the present case. He there upheld the principles so clearly stated in *Dupuy* v.

Misc.]   Surrogate's Court, Westchester County, December, 1921.

*Wurtz,* and restated in *United States Trust Co.* v. *Hart.* Surrogate Cohalan declined to change the decedent's domicile in spite of her long residence abroad.

Consequently, this court is called upon to follow the well-settled law, at least in this state, relating to domicile as laid down in the cases of *Dupuy* v. *Wurtz, supra; Matter of Newcomb, supra;* and *United States Trust Co.* v. *Hart, supra.* In the cases where our courts have held the former domicile abandoned, it was always upon the ground of a clearly proved voluntary and intentional acquisition of a new domicile. The union of *factum* (residence) and *animus* (intent) so necessary under the application of the principle of these three leading cases, does not occur in the instant case. The burden of proof cast upon the executors to show a lack of such union has been sustained. Even irrespective, however, of where the burden of proof may rest, the undisputed evidence in the record makes it apparent that John Lyon never abandoned his Connecticut domicile. The facts in *Matter of Barbour, supra,* are not altogether unlike the facts in the instant case. There, similar evidence was held to point irresistibly to the fact that the decedent intended to presume his domicile in the state of New Jersey.

The character of the residence being maintained for so many years, with property of a large amount in both states, it is not claimed that any question of evasion of the payment of a tax in New York state is involved. From the whole narrative, it is the court's opinion that there is no abandonment, *sine animo revertendi,* in law or fact, of his Connecticut domicile. To restate: unless one's domicile can be changed for him, without his intention, he must be considered at the time of his death as domiciled in the state of

14

Connecticut. Therefore, the domicile of origin continues and must govern the administration of his estate. The written documents are amply supported by his acts and conduct. All were *bona fide* and unequivocal and not made for the purpose of making evidence in this case. The question of motive is not raised, nor is it involved. The proceedings are remitted to the transfer tax appraiser in Westchester county to appraise the property of the decedent as a non-resident under the provisions of chapter 626 of the Laws of 1919.

Ordered accordingly.