In the Matter of the Revocation of Temporary Letters of Administration upon the Estate of HARRIET A. CURTIS, Deceased.

JAMES E. BURR, Appellant; HAROLD E. LIPPINCOTT, Temporary Administrator, Respondent.

In the Matter of the Revocation of Temporary Letters of Administration upon the Estate of HARRIET LOUISA CURTIS, Deceased.

JAMES E. BURR, Appellant; HAROLD E. LIPPINCOTT, Temporary Administrator, Respondent.

First Department, December 17, 1920.

**Executors and administrators — appointment of temporary administrator — evidence establishing residence of decedents — jurisdiction — surrogate without jurisdiction to appoint temporary administrators for decedents who were residents of other county.**

Evidence in a proceeding in the Surrogate's Court to set aside the appointment of temporary administrators of decedents leaving wills and naming executors who are residents of a foreign State examined, and *held*, that the decedents were residents of the county of Orange, in the State of New York, and that, therefore, the surrogate of New York county was without jurisdiction to appoint such temporary administrators and that his decree refusing to vacate the appointments should be reversed.

APPEAL by James E. Burr in the first-entitled proceeding from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 3d day of November, 1919, refusing to set aside the appointment of the temporary administrator of the estate of Harriet A. Curtis.

Appeal by James E. Burr in the second-entitled proceeding from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 3d day of November, 1919, refusing to set aside the appointment of the temporary administrator of the estate of Harriet Louisa Curtis.

*John B. Stanchfield* of counsel [*Stanchfield & Levy* with him on the brief], *Allen W. Corwin*, attorney, for the appellant.

*Joseph M. Proskauer* of counsel [*William M. Wherry, Jr.,* and *Frederick E. Mygatt* with him on the brief], *Gleason, Vogel & Proskauer*, attorneys, for the respondent.

SMITH, J.:

Harriet A. Curtis died on January 25, 1919, leaving a last will and testament, naming as executors therein a resident of Scranton, Penn., and a resident of Williamsport, Penn. Harriet Louisa Curtis, her daughter, died on January 10, 1919. Harriet A. Curtis left an estate of the value of about $900,000, and Harriet Louisa Curtis left an estate of upwards of $70,000. Harriet Louisa Curtis also left a will appointing as executors the same persons named in the will of Harriet A. Curtis, both residents of the State of Pennsylvania. Upon the petition of Sylvia Curtis White, verified February 8, 1919, Harold E. Lippincott was appointed by the surrogate of New York county temporary administrator of the estate of Harriet A. Curtis. Upon a similar petition of Sylvia Curtis White, dated upon the same day, Harold E. Lippincott was appointed by the same court temporary administrator of the estate of Harriet Louisa Curtis. Sylvia Curtis White was a granddaughter of Harriet A. Curtis, being a daughter of a son of Harriet A. Curtis, now deceased. She was, therefore, also a niece of Harriet Louisa Curtis. She was the sole next of kin residing in New York State and was, therefore, entitled to make a petition for the appointment of a temporary administrator. No citations were issued because there were no other next of kin residing in the State of New York and no will had been filed. The petition for the appointment of the temporary administrator of Harriet A. Curtis alleges the production of a paper purporting to be the will of said Harriet A. Curtis, but alleges that such paper was not the will of Harriet A. Curtis, for the reason that at the time of the execution of said paper the said Harriet A. Curtis was not of sound and disposing mind. Similar allegations were included in the petition for the appointment of the temporary administrator upon the estate of Harriet Louisa Curtis. There are no allegations in either of these petitions presented, one within eleven days after the death of Harriet A. Curtis, and the other within twenty-nine days after the death of

Harriet Louisa Curtis, which show any necessity for the appointment of a temporary administrator, except the allegation of the invalidity of the wills of these respective parties. Ordinarily the Surrogate's Court should be slow to appoint a temporary administrator, unless in case of real necessity, as such an appointment usually involves large additional expenses to the estate in the payment of the commissions of such temporary administrators. But this objection is not here urged by these appellants, who rely upon the fact that both of the said parties resided at Middletown in the county of Orange at the time of death, and by reason of that fact the surrogate of the county of New York had not jurisdiction to entertain the applications. The petition, however, asserts such residence in the city and county of New York, which, *prima facie,* gave to the surrogate the power to make the appointment in case of real necessity existing therefor.

One of the executors, James E. Burr, of Scranton, Penn., who is executor under both of said wills, thereupon made separate application to the surrogate for the revocation of the said letters of administration, and based the applications mainly upon the lack of jurisdiction in the surrogate of the county of New York, by reason of the residence of the said decedents at the time of their death in the county of Orange. The facts as appear from the record are substantially as follows: Sylvester J. Curtis was the husband of Harriet A. Curtis. At his death he left his widow, Harriet A. Curtis, one son, Thomas E. H. Curtis, the father of Sylvia Curtis White, and one daughter, Harriet Louisa Curtis. Sylvester Curtis died on the 25th day of September, 1899. Prior to his death he, with his widow and daughter, had been residents of the city of New York. At the time of his death the son was a resident of New Jersey. The will of Sylvester J. Curtis was probated in the county of Orange upon the petition of Thomas E. H. Curtis and Harriet Augusta Curtis. In that petition it was stated that the said deceased was immediately previous to his death an inhabitant of the county of Orange in the State of New York. The daughter, Harriet Louisa Curtis, was an invalid, needing and receiving at all times, up to the time of her death, the immediate care and supervision of her mother, Harriet A. Curtis. She was incompetent to

manage her own property. The petition of Sylvia Curtis White recites the death of her father, Thomas E. H. Curtis, upon August 30, 1915, and his residence at the time of his death and for a long time prior thereto, in Plainfield, N. J., and further recites that Harriet Louisa Curtis and Harriet A. Curtis, for a long time prior to August 30, 1915, resided with her son, Thomas E. H. Curtis, the petitioner's father, at his house in Plainfield in the State of New Jersey. It appears that during the lifetime of this son, Harriet A. Curtis and Harriet Louisa Curtis, residing with him at Plainfield, N. J., traveled from place to place with no fixed abode, except the home of her son in Plainfield, N. J. After the death of Thomas E. H. Curtis in 1915, however, Harriet A. Curtis, with her daughter, went to Middletown, Orange county, where a place was rented by Harriet A. Curtis and her sister-in-law. While Harriet A. Curtis was residing with her son in Plainfield, N. J., she collected a considerable amount of furniture, which was stored after the death of Thomas E. H. Curtis, and that furniture was all afterwards removed to this house in Middletown, Orange county, and the photographs in evidence show such furnishment with the property of Harriet A. Curtis, as would indicate a comfortable, if not luxurious apartment in this house in Middletown, which was the only fixed abode of Harriet A. Curtis or her daughter for about five years prior to their deaths in 1919. During this time they came to New York, but when coming to New York stopped either at a boarding house or mostly at different hotels, most particularly at the Waldorf Hotel, sometimes for several weeks at a time. All of the securities belonging to Harriet A. Curtis and Harriet Louisa Curtis were removed from safe deposit vaults in New York city to safe deposit vaults in the city of Middletown, and the only bank account which either party had was in a bank in the city of Middletown. They made verified returns under the Income Tax Law in which they described themselves as residents of the city of Middletown, Orange county, N. Y. In her contracts for safe deposit vaults in the city of Middletown she described herself as a resident of the city of Middletown. Neither of the said parties had any permanent residence in the city of New York

First Department, December, 1920.        [Vol. 194.

for many years prior to her death, and both regarded the city of Middletown as their home and so stated. A burial plot in the cemetery in the city of Middletown, upon which an elaborate monument was erected, belonged to Harriet A. Curtis, in which both she and her daughter expected to be buried, and in which they were, in fact, buried. All the evidence in the case points irresistibly to the fact of residence in the city of Middletown in January, 1919, except possibly the testimony of Harriet A. Curtis in a proceeding to which I will now refer. In 1900, after the death of Sylvester J. Curtis, Harriet A. Curtis and her son, Thomas E. H. Curtis, executed a deed of trust for the benefit of Harriet Louisa Curtis. The construction of that deed of trust depended in part upon whether in 1900, when that deed was executed, Harriet A. Curtis was a resident of the State of New York, or of the State of New Jersey. This question was presented in an action brought prior to 1918, and was pending in 1918, in which action Harriet A. Curtis gave testimony. The judgment rendered in that action was before us on appeal, and our decision is reported in *Curtis* v. *Curtis* (185 App. Div. 391). In that action one of the questions for determination was whether Harriet A. Curtis was a resident of the State of New York in 1900, and her residence thereafter in the State of New York was not at issue. The report of the referee in that action is significant. He finds, *first*, as a matter of fact that Harriet A. Curtis was born and brought up in the city of New York, where she married Sylvester J. Curtis, a resident of said city and with whom she lived for many years from the time of her marriage until his death in that State, in September, 1899.

" *Second.* That from and after the death of her said husband, the said Harriet Augusta Curtis continued to reside in *said City and State* of New York for a period of about two years, with the intention of continuing her residence in that State.

" *Third.* That during the said period of two years from and after the death of her said husband, the said Harriet Augusta Curtis did not change her residence to the State of New Jersey, nor have any intention to abandon the *City of New York, in the State of New York*, as her residence, and acquire a residence in the State of New Jersey.

"*Fourth.* That the plaintiff, Harriet Augusta Curtis, for more than a year past has been, and is, at the present time, a resident *of the State of New York.*"

It will thus be seen that while the referee holds that in 1900 at the date of the execution of said trust deed, Harriet A. Curtis and her daughter were residents of the city and State of New York, the fourth finding of fact is simply that for a year prior to the commencement of this action Harriet A. Curtis has been a resident of the State of New York. Apparently the referee was unwilling to find even from the testimony there given, in which action many of the facts here appearing did not appear, that for a year prior to the commencement of the action Harriet A. Curtis had been a resident of the city and State of New York as was found in the second and third findings of fact. She was then eighty-six years of age. She came down to New York to testify and stopped at the Waldorf Hotel. She was there registered as from Middletown, N. Y. There is some evidence that her name and residence upon the register were not in her handwriting. But the natural inference is that if written by a clerk of the hotel, the place of her residence was placed there by her direction. She was so feeble at the time of her testimony that her testimony was taken in her rooms at the Waldorf Hotel. She there testified that she was brought up and married in New York city, that she was a resident of New York city in 1900, and "*she clung to New York city as her home.*" In that testimony she speaks of Middletown as her home and then corrects it by saying that she always regarded New York as her home. She nowhere swears that she ever intended to return to New York, there to reside, and from that testimony itself, as well as from the establishment of a home in Middletown, the inference seems irresistible that she intended to stay in Middletown, as her home for the rest of her life, and there to be buried. It is upon this testimony that she always clung to New York as her home that the learned referee concluded that New York county was her home at the time of her death. Surrogate FOWLER in affirming the conclusion of the referee indicates that he had doubt as to whether the evidence establishes New York city as her home at the time of her death, but concluded: "While this undoubtedly is a close case,

concerning a legal residence in one spot or another within the State of New York, the opinion of the learned and careful referee, a gentleman of the highest character and learning, who took the evidence, has much weight with me. He saw the witnesses, examined the documentary evidence and reports the same with a careful opinion. I am not inclined to over-rule him." In the opinion of the referee, to which reference is made in the decision of Surrogate FOWLER, much stress is laid upon the fact of the sworn testimony of Harriet A. Curtis at this hearing. It will be seen, however, from the record of the proceeding that both her body and mind were much enfeebled, and cross-examination to any extent was made impossible by reason of her weakness. For that reason, in view of her establishment of a comfortable home in Middletown with no permanent abode in New York city, and of her state-ments under oath in her income tax returns that she was a resident of Middletown, N. Y., and in view of the fact that all her property, both furniture and her securities, had been removed from New York to Middletown, this evidence was given undue weight in determining the question of her actual residence in New York city at the time of her death. Upon a careful review of that evidence, upon which the referee in the main bases his conclusion, it is to my mind clear that her clinging to New York as her home was merely a matter of sentiment and she was not then an actual resident of New York city and never intended to become one, but that she was in fact a resident of the city of Middletown, in the county of Orange, where, as before stated, she evidently intended to remain until her death and there to be buried. If the conclusion of the referee and of the surrogate can be upheld, it must be upon the ground that the decedents were at all times since the death of Sylvester J. Curtis, in 1899, residents of New York city. But this, it will be noticed, is contrary to the allegation of the petitioner for the letters of temporary administration, as she there recites the residence of Harriet A. Curtis and Harriet Louisa Curtis in Plainfield, N. J., for a long time prior to the death of her father in 1915. The conclusion, therefore, of the referee and of the surrogate was, I think, clearly against the weight of the evidence, and the evidence establishes without any doubt in my mind that

Harriet A. Curtis was at the time of her death a resident of the city of Middletown, in Orange county, and was not a resident of the county of New York at the time of her death.

From the evidence of Harriet Louisa Curtis in the proceeding referred to, and from the practical concession of counsel, her residence was the same as that of her mother, and the determination of her residence in January, 1919, must be governed by the same facts as determine the residence of her mother at that time.

In the opinion of Surrogate FOWLER reference is made to the distinction between domicile and residence, and it is there suggested that the rule as to the intention of the parties may not have the same weight in determining the question of residence in different counties in the same State, and between different States or different countries. And this may well be so considered, in view of the fact that where the question arises as between domicile or residence in different States or different countries, different laws and different statutes may govern the administration of an estate, while as between residence in different counties within the same State, the same rule of law must govern administration. Furthermore, the question arising as to the right of administration within different counties within the same State rests largely upon the question of convenience of administration, and if any force be given to this consideration, the convenience of administration will be much greater in the county of Orange, where all the property of both decedents is situated.

My conclusion is that upon the evidence it is shown that both Harriet A. Curtis and Harriet Louisa Curtis, at the time of their deaths, were residents of the city of Middletown, in the county of Orange, and that the surrogate of New York county was without jurisdiction to appoint temporary administrators of their estates, and the decree of the surrogate refusing to vacate the appointment of temporary administrators should be reversed, with costs, and application for revocation of said letters should be granted.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Decrees reversed, with costs, and application for revocation of letters granted. Settle orders on notice.