In the Matter of the Estate of ELLA V. VON E. WENDEL.*

Surrogate's Court, New York County, June 16, 1932.

*George Flint Warren, Jr., John Edmond Hewitt* and *Henry J. Friendly* [*Elihu Root, Jr.*, and *John M. Harlan* of counsel], for the petitioner and executor.

*Arthur Garfield Hays* [*Samuel Untermyer, Arthur Garfield Hays, John Schulman* and *T. Raymond St. John* of counsel], for Rosa Dew Stansbury and others.

*Rosenblum & Sommer* [*David L. Podell* of counsel], for Dr. Samuel K. Johnston, legatee.

*Medina & Sherpick* [*Rufus C. Van Aken* of counsel], for James G. Wendel and others.

* See, also, 143 Misc. 480, 817.

*Stewart & Shearer* [*George L. Shearer* of counsel], for New York Society for the Relief of the Ruptured and Crippled.

*Barry, Wainwright, Thacher & Symmers* [*Herbert Barry* of counsel], for American Society for the Prevention of Cruelty to Animals, one of the residuary legatees.

*Dorman & Dana* [*William R. Dorman* and *Thomas J. Mooney* of counsel], for New York Homeopathic Medical College and Flower Hospital, one of the residuary legatees.

*Otheman & Swain* [*Edward R. Otheman* of counsel], for St. Christopher's School.

*Griggs, Baldwin & Baldwin* [*Edwin N. Moore* of counsel], for Drew University.

FOLEY, S.   The immediate question in this probate proceeding is whether the Surrogate's Court of New York county or the Surrogate's Court of Westchester county has jurisdiction of the estate of Ella V. von E. Wendel.   Did Miss Wendel die a legal resident of the county of New York or of the county of Westchester? The question has arisen as a preliminary issue.   (*Matter of Wendel,* 143 Misc. 480.)   It was raised by the statement made by the proponent in his petition for probate that Miss Wendell died a resident of this county and by the denial in the answers of certain claimants, who are possible contestants of the will.   It was also affirmatively alleged in these answers that Miss Wendel died a legal resident of the village of Irvington in the county of Westchester. The issue thus presented was tried by the surrogate.   Numerous witnesses were produced by either side and documentary evidence submitted on behalf of each.   The completion of the trial was greatly expedited by the commendable and helpful co-operation of counsel for the various parties in the plan of procedure suggested by the surrogate.   Instead of consuming unnecessary time by offering hundreds of documents one by one, summaries were prepared and offered in evidence, each covering numerous exhibits. Thus, in one summary, offered by counsel for the claimants, was embodied the entire record of the probate and administration proceedings, including the petitions, designations, oaths, the transfer tax proceedings and other incidental papers of the estates of the brother and five sisters of the decedent.   On behalf of the proponent, in four brief summaries were included the material statements contained in all Federal and New York State income tax returns, individual and fiduciary, over a period of years.   Another summary covered the entire record of personal property taxes listed by the city of New York against members of the family from the year 1860

and the ultimate disposition of the various assessments. By this expeditious method of procedure on the part of counsel the task of the court in the analysis of the evidence has been greatly simplified.

The opposing parties concede that Miss Wendel's original domicile was in the county of New York, which was the legal residence of her father at the time of her birth. She was born at Abbotsford, Westchester county, on September 5, 1853. The place of birth is immaterial, for by operation of law the domicile of origin of a legitimate child is that of its father. (American Law Institute Restatement Conflict of Laws, § 16; *Matter of Thorne*, 240 N. Y. 444.) There are certain exceptions to this general rule discussed in the *Thorne* decision which are not material here.

It is the claim of the proponent that Miss Wendel's domicile of origin never changed and remained in New York county until the date of her death. On the other hand, it is the contention of the claimants that about the year 1881 Miss Wendel changed her legal residence to Irvington; that the necessary burden of showing such a change of domicile has been sustained by evidence of her conduct and declarations, oral and written, and that the new domicile of choice continued in Westchester county until her death.

In my review of the evidence I have not accepted in entirety either of these contentions. We have the concession of the parties that the domicile of origin was in New York. In partial agreement with the claimants, I find that her legal residence has been proven to have been changed subsequently to Westchester county. The transfer was intermediate, however, and not final, for I find clear and convincing proof that in the last years of her life she returned to her domicile of origin in New York county and that she died a legal resident here. The conclusion necessarily follows that this court has exclusive jurisdiction over her estate and of the proceeding for the probate of her will. (Surr. Ct. Act, § 45, subd. 1.)

In connection with the claims of the proponent, it is urged that the law sanctions the application of a rule of convenience, which permits the Surrogate's Court to entertain jurisdiction, in a close and doubtful case of domicile, in the county where the estate is principally located in order to effect convenience of administration. Reliance is placed upon the opinion of Judge PECKHAM in *Bolton v. Schriever* (135 N. Y. 63, 73), where he wrote that it was " a matter of very trifling importance, except upon the mere question of convenience," as to which of the Surrogates' Courts should assume jurisdiction of the probate of a will. A somewhat similar statement is repeated in the opinion of the Appellate Division, First Department, in *Matter of Curtis*, decided in 1920 (194 App. Div. 334, 341; affd., 231 N. Y. 632), where consideration was apparently given to

the fact that all of the property of the estate was situated in the county of Orange, which was determined to be the county of domicile.

In the present proceeding the complexities surrounding the probate of the will might well justify the application of such a rule of convenience, and even a rule of expediency if the law permitted it. The estate property is located almost completely here. There are over eighteen hundred claimants who have appeared as possible contestants. Miss Wendel left only remote collateral relations. The ascertainment of the heirs and next of kin has been difficult. It was necessary to file a supplemental petition to bring in new parties possibly interested. Publication of citation and supplemental citation necessarily took place. The issue of lack of jurisdiction in this court was not raised until a year after the death of the decedent. A finding of jurisdiction in Westchester county will nullify every step which has been taken thus far. It will require a new proceeding to be begun in Westchester, new citations to be served and published and new appearances to be filed by the attorneys for the numerous claimants.

Despite these considerations, however, I regard the recent decision of the Court of Appeals in *Matter of Daggett* (255 N. Y. 243, 245) as conclusive upon the surrogate. Chief Judge Pound there, in construing section 45, subdivision 1, of the Surrogate's Court Act, which defines the jurisdiction of our court over a resident's estate, held: " The word ' residence,' while it may not be for all purposes of probate synonymous with ' domicile ' * * * is identical in meaning so far as the question " of jurisdiction over an estate by the Surrogate's Court is concerned. (Citing *Matter of Newcomb*, 192 N. Y. 238, 250, and *Kennedy* v. *Ryall*, 67 id. 379, 386.) The effect of that decision is that the proceeding, probate or administration, must be brought in the Surrogate's Court of the county of the decedent's domicile since it has exclusive jurisdiction of the estate. The rule enunciated by Chief Judge Pound is unquestionably salutary, for it prevents the arbitrary and improper choice of a particular Surrogate's Court, with resultant inconvenience and delay to the next of kin or legatees of a decedent. Expediency, therefore, must be disregarded and the determination of the surrogate in each case must rest upon the facts and the pertinent law.

The testimony in this proceeding has developed four salient periods in the lifetime of Ella Wendel, which covered seventy-eight years:

*First.* From 1853, the date of her birth, to about 1881, during

which her conceded domicile of origin in New York county continued
without change.

*Second.* From 1881 to early in 1926, when her acts and decla-
rations, oral and written, and particularly those statements made
by her under oath, clearly prove an abandonment of the original
domicile in New York, the establishment of a new domicile in
Irvington, Westchester county, and its continuance there during
this period.

*Third.* A transitional period, from 1926 to February, 1929,
during which there are found for the first time contradictory
declarations by Miss Wendel of location or residence or address in
written documents, some describing her as of New York, and others
as of Irvington.

*Fourth.* The final and most important period, from February
18, 1929, to the date of her death on March 13, 1931, when her
written declarations, with few exceptions, describe her residence
as of 442 Fifth avenue in New York county. It is during this
period that, without a single exception, her sworn statements in
formal documents, many of them currently filed in judicial proceed-
ings, describe her as a resident of New York county. These sworn
statements alone, although amply supported by other testimony,
have clearly and convincingly proven to my satisfaction that
Miss Wendel changed her domicile from Irvington to New York
county. They establish, unequivocally, that she died a legal resi-
dent of this county.

The evidence in the case which has led to these conclusions
shows the family history and the habits and manner of living
of Ella Wendel. It has been shown that the upbuilding of the
Wendel family fortune was begun by John Gottlieb Mathias Wendel,
the grandfather of Ella Wendel. It was based almost exclusively
upon investments made in real estate in the city of New York. The
management was continued by her father, John D. Wendel, then
carried on by her brother, John G. Wendel, and after his death by
certain of her sisters, and finally by herself. About the year 1845
the Wendel family home at 442 Fifth avenue, New York city, was
established. A few years later a country place at Irvington,
Westchester county, was purchased. In 1899 there was developed
another family country place at Quogue, Long Island. The father
died in 1876, the mother in 1894. During their lifetime the parents
spent the winters with their children at their Fifth avenue residence.
Their summers were spent at Irvington. For some years after
1900 Ella Wendel and a majority of the members of her family
appear to have spent the winter at 442 Fifth avenue, the summer
at Quogue, the spring and autumn at Irvington. Isolated trips

to Europe altered slightly the family custom. The summer house at Quogue was not used by Ella Wendel after about 1915. Beginning about the year 1907 she spent the winter in New York city and the remainder of the year at Irvington. For at least the last twenty years of her life she uniformly followed this practice. In each of these years she lived at Irvington from about April or May until the latter part of November or the middle of December. She usually returned to 442 Fifth avenue before Christmas. The average duration of her stay at the Fifth avenue home was four months in each year. The average time spent at Irvington was eight months annually. The New York house was kept open all year round. The Irvington house was unsuitable for habitation in the colder weather and was closed each winter. A staff of servants was continuously maintained in the New York house. With the exception of her sister Rebecca, who had married in 1903, the other members of the family appear to have also lived at 442 Fifth avenue in the winter months. None of the household servants was retained all year at Irvington, although it appears that gardeners and other employees for the maintenance of the grounds and stables and barns were kept there.

The first written declaration by Miss Wendel of her address or residence at Irvington appears to have been made by her in 1881 when she opened a bank account in the Seaman's Bank for Savings of New York city. In the subsequent twenty years her written statements of location or residence are relatively few. In the proceedings for the probate of her father's will in 1876 in this court, she is described as a resident of Irvington. In 1900 her first formal declaration under oath of her residence at Irvington occurred. It was embodied in an affidavit in proceedings with regard to the mental competency of her sister Georgiana. There followed several written declarations, some unverified, others formally sworn to, which uniformly describe her residence or address as of Irvington. These documents cover the second period which I have referred to above, extending to 1926. The unsworn declarations of residence are included in deeds, leases and other instruments made by her. Her sworn statements of residence in Irvington, during this period, were filed in the incompetency proceeding in 1900, in the proceedings in the Surrogate's Court of Westchester county for the administration of the estate of her sister Augusta who died in 1912, and in the estate of her brother, John G. Wendel, who died in 1914. Her sister Josephine died in 1914, a resident of Westchester county. While the file of papers in Josephine's estate in that court contains no personal declaration of residence by Ella Wendel, the records show that she was described as residing at Irvington. Similarly,

in the estate of her sister Mary, who died a resident of New York county in 1922, there appears to be no statement made by Ella Wendel as to her residence, although the papers recite her as residing at Irvington.  There is some evidence that the change of domicile was brought about by the suggestion of her brother, in order to avoid personal property taxation in New York city.  Motive, however, is immaterial, in the face of sufficient evidence of the selection of a new legal residence.

In the third or transitional period from 1926 to 1929 referred to by me, conflicting declarations of residence or location appear for the first time since the year 1881.  Thus, in her 1926 individual New York State income tax return, signed and verified by her, her " residence address " is given as at " 442 Fifth Avenue, New York, N. Y."  In her State returns made in the years 1927 and 1928 she again stated that " her residence address " was at 442 Fifth avenue, New York city.  Her individual Federal income tax returns beginning with 1917 stated the " address of taxpayer " to be No. 175 Broadway, New York city, the office of the Wendel estate.  These declarations are of small importance.  The business address was repeated throughout the following years and was included in the last Federal return filed before her death.  It is of some significance, however, that the returns were filed in the appropriate Federal office in the United States Custom House in New York county.  (*Matter of Barbour,* 185 App. Div. 445; affd., 226 N. Y. 639; *Matter of Frick,* 116 Misc. 488; *Matter of Lydig,* 191 App. Div. 117.)  In this period between 1926 and up to February 17, 1929, there is but one instrument, a lease, executed in 1928, wherein she describes herself as " of Irvington."

In the fourth period between February, 1929, and the date of her death, her first sworn statement in any judicial proceeding, that her residence was at 442 Fifth avenue, occurs.  In her petition, verified February 18, 1929, for letters of administration in the estate of her sister Georgiana, in the Surrogate's Court of New York county, she describes herself as of " 442 Fifth Avenue, in the Borough of Manhattan, City of New York, of the County of New York."  In her duly acknowledged designation (made by her as administratrix) of the clerk of this court for service of process required by the Surrogate's Court Act, she stated: " I reside at 442 Fifth Avenue, New York City."  Her bond, as administratrix, likewise described her as of that residence.

In the year 1929 the Federal income tax fiduciary return made by her as trustee contains the first reference in her Federal returns to her address as beneficiary at 442 Fifth avenue.  This statement was repeated in her Federal return in the year 1930.  Her individual

and fiduciary New York State income tax returns made in 1929 and 1930 likewise give her " residence address " at her Fifth avenue house. Finally, in the petition for the probate of the will of her sister Rebecca Wendel Swope, dated July 31, 1930, Ella Wendel stated under oath that she was " residing at 442 Fifth Avenue." Her formal designation in that proceeding of the clerk of this court to accept service of process, formally acknowledged on July 31, 1930, declares, " I am a resident of No. 442 Fifth Avenue," and her statutory oath as executrix, sworn to upon the same day, repeats that statement.

Two additional instruments, one a bond, and the other a power of attorney, each executed on December 5, 1930, three months before her death, describe her as of New York county. " Acts are regarded as more important than declarations, and written declarations are usually more reliable than oral ones." (*Dupuy* v. *Wurtz*, 53 N. Y. 556, at p. 562.) To which may be added that sworn written declarations made in judicial proceedings are usually more trustworthy than unverified written statements. " The right to choose implies the right to declare one's choice, formally or informally as he prefers, and even for the sole purpose of making evidence to prove what his choice was. Such declarations are not self-serving in an improper sense, unless they are made with intent to deceive. If they are false and made for a sinister purpose, they will meet the fate that falsehood always meets in courts of justice when discovered by the triers of fact." (*Matter of Newcomb*, 192 N. Y. 238, at p. 252.)

It is upon the sworn statements of residence by Ella Wendel in the last two years of her life that I have found a present, definite and honest purpose and determination, on her part, to abandon her legal residence in Irvington and to return to New York county, where her domicile originated. The learned and comprehensive opinions in the leading cases in our State (*Matter of Newcomb*, 192 N. Y. 238; *Dupuy* v. *Wurtz*, 53 id. 556) set forth the material rules of law applicable to the determination of domicile here. Briefly summarized, they are: (1) That a person must have a domicile somewhere; (2) that a person may have two places of residence, as in the city and in the country, but only one domicile; (3) that the domicile of origin or of selection, if established, is presumed to continue until a new one is acquired; (4) that the burden of proof rests upon the party asserting the change; (5) that to sustain this burden there must be a union of conduct and intent.

In the process of reaching a final determination, I have held that the claimants successfully met the burden of proof in establishing a change of the domicile of Miss Wendel to Westchester county

after the year 1881. It is not important that the proponent's contention upon the trial did not accord with that finding. The evidence of declarations and conduct, from February 18, 1929, up to the date of death, established a new change of domicile from Irvington, whereby New York county superseded Westchester. The burden which was cast by law, and not by choice, upon the proponent, has been satisfactorily sustained by the evidence of her acts and her expressions of intent during the last two years of Miss Wendel's life. The presumption of continuance is but a rule of evidence which may be overcome by satisfactory proof sustaining a further change. If her earlier sworn declarations may be invoked by the claimants, in order to sustain the first change of domicile, the later ones in the last two years of her life, may be as forcibly applied to establish a new change and a return to New York county. What Miss Wendel readily adopted, may have been later readily laid aside by her. (*Matter of Robitaille*, 78 Misc. 108, 110.) She was entitled to choose between her Fifth avenue home and Irvington for any reason that seemed appropriate to her, provided the evidence of acts and purpose sustained the choice. She was " free to select her own residence of domicile without let or hindrance; to elect between her country home and the city with no better reason than her desire to have her will proved and her estate settled in one county rather than another." (*Matter of Daggett*, 255 N. Y. 243, at p. 246, citing *Matter of Newcomb, supra.*)

It is common knowledge that some men and women, who maintain both a city and country home, elect for various reasons to adopt one or the other as their legal residence. Sometimes they are motivated by a desire to escape jury duty, or avoid the assessment of taxes. Others are actuated by sentiment. In the case of Miss Wendel, her desire to return to a domicile in New York county was probably not only sentimental, but a choice affected by business reasons. There are oral declarations in the record made by her in her later years in which she refers to her solicitude for her " home " at 442 Fifth avenue, and to Irvington as her country place. She was the last survivor in the direct line of her family. It was natural that she should return to a domicile at her home in the city and county where the family fortune was accumulated and the great bulk of her property holdings located.

It is a significant fact that at her death she owned in fee one hundred and forty-three parcels of real estate in the county of New York. There were seven parcels in Brooklyn, the country estate at Irvington and two other less valuable parcels in Westchester county. She also owned property at Quogue, Long Island. In addition there were three scattered holdings of small value in

States other than New York. Beside her ownerships in fee, she had the enjoyment of twelve life estates of property in New York county, one in Brooklyn and five elsewhere. The value of the parcels owned in fee in New York county was $29,356,000 and the real property wherever situated has been valued at $29,988,025. Based upon values, therefore, almost ninety-eight per cent of the total value of the real estate was located in New York county. Less than one per cent, in value, was situated in Westchester. The concentration of the financial operations of a person and the maintenance of bank accounts in a locality have always been elements for consideration in cases of domicile. Almost her entire income was derived from rentals of the New York county realty. Miss Wendel had at the time of her death cash or deposits in banks in New York county amounting to almost $1,900,000, whereas there was in Westchester county in a single bank only the sum of $8,983.26. Bonds, corporate stocks of the city of New York and other securities belonging to her, amounting to approximately $2,900,000, were kept in New York county. None was found in Westchester. The management of the estate was conducted through an office in this county. She never paid any personal taxes either in New York city or in Irvington. She never voted at any election, general, local or special. At the time of her death, in safes and other places in the home at Fifth avenue, securities valued at approximately $40,000, and cash amounting to almost $12,000, were found. Compared with this, the house at Irvington contained no securities and about $49 in cash. Her jewels were kept at the New York home. There in a safe were filed the deeds and title papers of the valuable parcels of real estate owned by her.

The long-established family tradition, continued by Ella Wendel, had forbidden the sale of the valuable Fifth avenue property and had fostered its retention as the family home. That policy meant a great loss in revenue as compared with its sale or lease, or conversion into business occupancy. Its maintenance as a home likewise entailed in the later years an annual charge of $75,000 in taxes.

In February, 1929, when I have found that the return to New York county as a domicile took place, Ella Wendel was seventy-five years of age. Her sister Rebecca had become blind and the supervision of the estate properties in the last year of Rebecca's life devolved upon Ella. After Rebecca's death in 1930, the titular and actual responsibility was that of Ella Wendel. Surely all these circumstances furnished strong reasons why she should determine to turn from Irvington to New York and to acquire anew her Fifth avenue home as her legal residence in her remaining years. She

died at her Fifth avenue home on March 13, 1931. She was buried in Trinity Cemetery in the city of New York.

It is urged by the claimants as important that Miss Wendel in her will executed on July 20, 1923, described herself as " of Irvington." A similar description was incorporated in the first codicil, executed February 18, 1929, and in the second codicil, executed June 13, 1929. I regard these words of description as of little weight. They are not specific statements of domicile, but may be construed as words of sojourn, or location. The will was executed in 1923 in the period in which I have held that she was domiciled in Westchester county. On the very day on which she executed the first codicil on February 18, 1929, she made the much more important sworn declarations in her petition, designation and bond in the estate of her sister Georgiana, wherein she stated that she resided at 442 Fifth avenue, New York city. Similar words of description in wills, inconsistent with the evidence in the case, have been frequently disregarded by the courts. (*Matter of Mesa y Hernandez*, 172 App. Div. 467; affd., 219 N. Y. 566; *Matter of Lydig*, 191 App. Div. 117.) In the *Hernandez* case the declaration in the will was certain and definite since the testator described himself as " residing and domiciled at the City of New York." Notwithstanding this characterization, the court found that the decedent was domiciled " in law and in fact " in Cuba, the place of his birth. For similar reasons the declaration in the only other instrument in this last period, in a deed dated March 30, 1930, describing her as " of Irvington," a phrase of location only, must be disregarded. Its effect is entirely overcome by the numerous formal documents, sworn and unsworn, of the decedent in the same period and containing clear and definite statements of residence, rather than of mere location.

It has been held that less evidence is required to establish a change of domicile from that of selection and a return to the domicile of origin. (*Matter of Robitaille*, 78 Misc. 108; *Matter of Betancourt y Agramonte*, 144 id. 173.) It is unnecessary, however, to invoke that rule here because of the strength and weight of the testimony establishing the final change in 1929 and the complete abandonment of Irvington as the domicile.

Submit order on notice accordingly sustaining the jurisdiction of this court and holding that Ella V. von E. Wendel died a resident of the county of New York.