In the Matter of the Estate of ARTHUR HUDSON MARKS, Deceased.
Surrogate's Court, New York County, November 27, 1940.

*Jerome D. Gedney* and *Wellman, Smyth & Lowenstein,* for the executrix.

*Jerome M. Hirsch,* for the State Tax Commission.

FOLEY, S. The principal question presented for decision is whether the decedent at the time of his death was domiciled in the State of New York or in the State of Florida. Upon the stipulation of the parties the question is to be determined upon the evidence, quite detailed in nature, that was submitted before the appraiser.

Upon that evidence, I hold that the decedent died domiciled in the State of New York.

Arthur Hudson Marks, the decedent, was born in Lynn, Mass. Later he moved to Boston and subsequently to Akron, Ohio, where he became prominently identified with the rubber industry. During the World War he left Akron and located in Washington, D. C. Sometime in the latter part of 1918 he came to New York city.

A review of his principal activities in New York, as contrasted with subordinate and sporadic declarations and connections with Florida, strongly support a finding of domicile in our State. The decedent was, for many years, an executive of the B. F. Goodrich Rubber Company in New York city. He served this company as a director and a member of the executive committee and, at the time of his death, was vice-chairman of the board of directors. He was very active in its affairs and regularly attended meetings of the board and of the executive committee.

Mr. Marks, while retaining his connection with the Goodrich Company, also identified himself with the Aeolian-Skinner Organ Company of this city. He was a prime factor and moving spirit in this company and was its president until April 15, 1939. At the time of his death he was a director.

His hobby was genealogy and he employed a woman assistant to help him trace the beginnings of his own family. His studies and research on this subject were done in New York.

In 1924 the decedent married Margaret Martin.

Just prior to their marriage, Mr. Marks purchased a proprietary interest in a large penthouse apartment at 1158 Fifth avenue, New York city. He and his wife lived in that apartment until the latter part of 1927 when they moved into a smaller one in the same building. Mr. Marks did not dispose of the larger apartment but merely sublet it unfurnished. Later, he gave the smaller apartment to Mrs. Marks and the stock and lease were transferred to her name. But it continued to be their home until the decedent's death.

In October, 1925, Mr. Marks bought a country estate, called "Pegmarquen," at Turnwood, Ulster county, N. Y. At the time of the purchase the property consisted of about 300 acres. On it there was a main building, a guest house and numerous outbuildings.

He later purchased an additional 800 acres and made considerable improvements. These included a new guest house, a swimming pool, tennis courts, three paddocks and a mile track for exercising his horses. Four years were spent in landscaping the property; a terrace, an artificial lake, trees and shrubbery were added to beautify the place. The main house was expensively furnished.

The decedent used "Pegmarquen" as a country retreat. He was much attached to the place and remarked, on many occasions, that it "was a life saver for him since he could readily reach it in about three hours from his home in New York" and that it "offered all of the sport and outdoor life that he loved — fishing, shooting, tennis, swimming, archery and golf."

Mr. Marks was a member of several clubs located in New York city and three others located in the vicinity of his country home in Ulster county.

His principal bank account was maintained in a trust company in New York city for a period of ten years before his death.

He maintained a custody account and a safe deposit box with the same trust company, and upon his death his stocks and bonds, personal letters and checks were located there. The schedules filed by the executrix set forth the value of these securities at approximately $425,000.

The only charitable contributions the decedent was known to have made were given to a religious organization in New York city.

In the light of the facts just recited, the statement of one of the witnesses is an accurate comment. He said, " New York was the seat of all his operations from the standpoint of home, social activities and his business activities."

Against the array of evidence showing the requisite elements of intent and acts on the part of the decedent to continue his residence in New York, the circumstances which it is claimed establish that the decedent was domiciled in Florida are of small weight and unimpressive character.

Thus, it was shown that in 1927 Mr. Marks bought a house and seashore property in Palm Beach, Fla. But it was also shown it was used only for winter occupancy and then only for three successive years. At the close of the 1930 season the property was put up for sale or rent.

The depression which began in 1929 affected the decedent's income with the result that his Florida real estate soon became a burden to him. To that reason was attributed his determination to sell the property.

For three years, 1930 to 1932, after placing the property on the market, Mr. Marks did not even visit Florida. In subsequent years, his visits were of short duration and concerned principally with his efforts to dispose of the place. The property was rented from year to year and was still for sale at the time of his death in 1939.

Unlike other cases in which a change of domicile has been asserted, there are no unequivocal or continued declarations by Mr. Marks that his residence was in Florida. The declarations and acts in this case are isolated, sporadic and of no affirmative value. They consist *first* of a declaration in his will that he was " a resident of the Town of Palm Beach * * * Florida." Similar words of description in wills, inconsistent with the evidence in the case, have been frequently disregarded by the courts. (*Matter of Wendel*, 144 Misc. 467; *Matter of Mesa y Hernandez*, 172 App. Div. 467; affd., 219 N. Y. 566; *Matter of Lydig*, 191 App. Div. 117.)

*Second*, it appears that he paid a poll tax in the year 1930 and registered for a town election in the year 1931. It has not been shown that he ever voted there or not. He never registered in that State as a person qualified to vote in a general election.

*Third*, it has been shown that he claimed a homestead tax exemption for the years 1935 to 1939. It was testified by an attorney admitted to practice in the State of Florida that in order to claim this exemption it was not necessary for him to show that he was domiciled in Florida. It is clear that the claim to exemption was solely to effect a saving in taxes.

Finally his visits during the latter years of his life to Florida were brief and temporary compared with his continued habitation in New York and his close association with and activities in this county and State where his home, business and social interests were centered.

In the celebrated case of *Texas* v. *Florida* (306 U. S. 398) there were somewhat similar circumstances involving the determination of the domicile of Edward H. R. Green. Mr. Justice STONE pointed out that Massachusetts had become the principal home and the established domicile of the decedent. Florida claimed a subsequent abandonment of the Massachusetts domicile by the acquisition of a house in Florida. The opinion of the court reads: "In such circumstances Florida carries the burden of showing that the earlier domicile was abandoned in favor of a later one * * *. That burden is not sustained by showing a period of winter residence there in obedience to the demands of health, in the absence there of the activities associated with decedent's chief interests and of the objects of those interests" with which he had surrounded himself in his home in Massachusetts.

A review of the applicable authorities in the present situation is unnecessary. It is sufficient to say that the evidence shows a continued union of conduct and intent on the part of the decedent to make his New York residence his permanent home. His assertions and conduct to the contrary are overcome by the facts. The necessary burden of establishing a change of domicile from New York to Florida has not been met. (*Texas* v. *Florida, supra; Matter of Newcomb*, 192 N. Y. 238; *Matter of Packard*, 223 App. Div. 491; affd., 251 N. Y. 543; *Matter of Trowbridge*, 266 id. 283, *Matter of Leidenger*, 173 Misc. 808; *Matter of Lohmann*, 157 id. 169; affd., 248 App. Div. 714; Restatement, Conflict of Laws, §§ 19, 23.)

The first, third and fourth grounds of appeal, directed to the issue of domicile, are, therefore, overruled.

Pursuant to the stipulation entered into between the parties upon the oral argument, the second ground of appeal is overruled without prejudice to the making of an application for an order to modify the order fixing the tax within the statutory period of two years in the event that the personal claim of Margaret Martin Marks, the ancillary executrix, is allowed by the Surrogate upon the accounting.

Submit order on notice accordingly.