In the Matter of the Probate of the Will of ALEXANDER C. LAMOUTTE; Deceased.

Surrogate's Court, Broome County, July 13, 1949.

*Charles W. Turner* and *John R. Normile* for City National Bank of Binghamton, as executor of Alexander C. Lamoutte, deceased, proponent.

*James E. Freehill, Robert J. Ryan* and *Charles R. Stewart* for Luis J. Francke, Jr., contestant.

PAGE, S. The nominated executor, the City National Bank of Binghamton, New York, on February 17, 1949, filed a petition herein for the probate of the alleged last will and testament and series of codicils thereto. Upon the return of the citation, objection was filed on behalf of a son of the deceased, Luis J. Francke, Jr. (after the divorce of his parents he had assumed the name of a later husband of his mother), challenging the jurisdiction of this court upon the ground that the deceased, at his death, was not a resident of Broome County, but of Nassau County. After some delay the issue has now been tried. The sole question for present determination is as to which of these two counties was the final domicile of deceased.

Section 45 of the Surrogate's Court Act provides that exclusive jurisdiction resides in the Surrogate's Court of the county " Where the decedent was, at the time of his death, a resident of that county, whether his death happened there or elsewhere." It is to be noted that the statute provides as to " residence ", not " domicile ". In its legally important bearing, domicile is usually related to a country or State. But in various instances, the connotation is as to a particular menage or dwelling within a political subdivision or municipality. (A dissertation along this line is to be found in 1 Beale's Conflict of Laws, § 9.6.) Although there are various connections in which " residence " and " domicile " are not synonymous, yet, for the purpose of the determination of jurisdiction as between two or more counties of the State the principles determinative of domicile, undoubtedly because there is no other practicable method, are applied. (*Matter of Greene,* 186 App. Div. 903; *Matter of Wendel,* 144 Misc. 467; *Matter of Sawyer,* 190 Misc. 659; *Matter of Daggett,* 255 N. Y. 243.)

Fortunately, the domiciliary circumstances of the great majority of people are such that there can be no serious question as to them in that regard. However, in a fair proportion of cases, which are tending to increase because of modern conditions, the personal situations of individuals is such that, where the question of domicile is raised, determinations thereof are often highly problematical. Such is the present case.

In cases presenting the issue of domicile, there is usually a great variety of detailed considerations more or less comprising or contended to comprise bases of inferences as to domiciliary intent. No two adjudications stand on exactly the same, and

few on even very closely similar, bases. Particular elements identified with the criteria to be considered are often accorded greater force and effect in one case than in another because of relative evaluations, in view of the nature or special significance of other conditions and circumstances all in the same bundle. (*Matter of Trowbridge*, 266 N. Y. 283, 289; *Texas v. Florida,* 306 U. S. 398.) In every case an endeavor should be made to avoid a minute tracing out of details which tends to lead into a dismal swamp where eventual emergence on solid ground is jeopardized.

The fundamental principles determinative of domicile are well settled in this State and generally throughout all English-speaking jurisdictions. Selecting ultimate criteria of domicile applicable to the present situation, as authoritatively stated in such cases as *Dupuy v. Wurtz* (53 N. Y. 556) and *Matter of Newcomb* (192 N. Y. 238) it is to be noted: (1) everyone has a domicile, but only one at any given time; (2) physical presence is an indispensable factor, but must be united with an expressed or inferred attitude, consistent with actions and manner of living accordingly, on the part of the person whose domicile is in question showing his regard of his particular residence in question as a lasting abode, or that, in the event of absence from it, he intends to ultimately return to it as his home; (3) a person's domicile, once established, although he departs from it, continues in legal contemplation until abandoned and replaced by another; (4) the conclusion as to whether or not one domicile has been replaced by another depends on a composite appraisal of the unique circumstances and conditions of the person whose domicile is in question. (A reported case wherein these and other principles in relation to domicile are very extensively stated and discussed is *Matter of Lyon*, 117 Misc. 189, 191–210.)

As observed, physical presence alone is not enough. It must be co-ordinated with intent. Did the individual in question reside at one of the places in question with the requisite intent of making it his permanent home to the extent that anything in human life and affairs is " permanent "?

In the present case it is undisputed that decedent's domicile of origin was in Puerto Rico. It also is unquestionably established that he abandoned this domicile of origin and acquired first a domicile of choice in his youth in New York City and later, a subsequent domicile of choice in Binghamton, New York. He first came to Broome County about 1905 and entered into an employment by Anthony & Scoville, which later merged with, or

otherwise became the Ansco Company. He continued his residence in New York City and traveled back and forth for about the first two years. In 1907, he took up his residence in Binghamton. He eventually became secretary of this industrial corporation. Before 1907, he had been divorced from his wife. He lived mostly in Binghamton in rooming houses except for occasional periods when he had an apartment and housekeeper because of his having temporary custody of his two children who came here and lived with him for a short time, or times, on one or more occasions. The Binghamton city directory lists him as a resident from 1907 to and including 1922. The records of the election commissioners of Broome County show that he was an enrolled voter in Broome County during some of the years between 1907 and 1922. Some reorganization of the Ansco Corporation in 1922 caused him so much dissatisfaction that he quit his position and left Binghamton shortly thereafter.

It is unnecessary to go into any further detailed discussion of evidence tending to show that deceased acquired a domicile of choice at Binghamton, New York. That he did so seems to be conceded by all parties concerned herein. The issue is whether he ever abandoned Broome County and adopted Nassau County as his domicile, that is which must be inferred from the evidence to have been his final residence in the sense of domicile.

Since this is the sole ultimate issue in controversy, we have to consider such evidence as has been presented herein, on the one hand, tending to show retention of the Binghamton domicile and, on the other hand, tending to show its abandonment and acquisition of a subsequent domicile as contended.

In considering this question, the avoidance of a maze of " pros " and " cons " can best be accomplished by first orienting our position upon the judicially established determinatives of domicile, and as to changes therein, applicable here in view of the present facts.

Given an established domicile at some period during the life of a person in question, it is presumed to continue until shown to have been abandoned. Even if it has been abandoned, it seems to remain as the domicile the law will assign, unless or until another is shown to have been adopted. The burden of proof is upon a party claiming that such domicile was succeeded by a later one. (*Matter of Lydig,* 191 App. Div. 117; *Matter of Newcomb,* 192 N. Y. 238, 250, *supra; Matter of Fischer,* 151 Misc. 74; *Dupuy* v. *Wurtz,* 53 N. Y. 556, *supra.*) In some instances, this is a very easy burden to support, in others it is, in varying

degrees, more difficult and in still others impossible. In the present case, the issue is highly controversial, mainly because of the fact that the deceased has been absent from Binghamton and Broome County almost continuously ever since somewhere between 1922 and 1924.

No claim is made herein that the Binghamton domicile was abandoned or a new one acquired for a long period of years after deceased left Binghamton. It appears that he never took up another position of gainful employment. He apparently had sufficient means for his personal support and moved around from one place to another without settling down anywhere, unless the objectant is correct in his contention that, after leaving Binghamton in 1922, he finally did so in 1941 at Garden City, Long Island.

It is unusual to find an instance of a person's practically uninterrupted absence from one domicile without some convincing evidence, in addition to the lapse of time, of his having adopted another for such a long period as a quarter of a century. Ordinarily such a denouement is improbable. But, according to one of the above-stated well-established principles as to domicile, it is by no means impossible. (Authorities on the question of long-continued absence holding that such a fact, though it has a bearing upon, yet is subordinate to the question of intent to change are: *Dupuy* v. *Wurtz, supra,* p. 561; *Matter of Newcomb, supra,* p. 250, which states: '' Mere change of residence  *  *  * for a long time does not effect a change of domicile '', but the court did not specify how long is a '' long time ''; *Matter of Blumenthal,* 101 Misc. 83, affd. 186 App. Div. 944 [14 years in Paris]; *People* v. *Platt,* 117 N. Y. 159, 167; and *Matter of Cleveland,* 28 Misc. 369, 371 [18 years in France].)

Authorities to the effect that there must be an express or implied intent to abandon as well as absence from a person's domicile of origin before a later domicile can be regarded as having been established are numerous. A few of them are: *de Meli* v. *de Meli* (120 N. Y. 485, 491); *Dupuy* v. *Wurtz* (*supra,* p. 562); *United States Trust Co.* v. *Hart* (150 App. Div. 413, mod. 208 N. Y. 617); *Matter of James* (221 N. Y. 242); *Matter of Newcomb* (*supra*); and *Matter of Lyon* (117 Misc. 189, *supra*).

It is difficult to see where there is any essential difference in this regard between a domicile of origin and a later definitely established domicile of choice, which is contended to have been abandoned and a still later one acquired. The present case will be determined on this same principle extended to the present

instance where the question is as to the abandonment or non-abandonment of one domicile of choice, as distinguished from the domicile of origin, in favor of another and subsequent domicile.

The question is, did the decedent, in 1941 or at any time thereafter, acquire a new domicile of choice in Nassau County? The determinative facts are conceded. The decedent moved to Garden City in 1941. It appears that he lived there alone in a hotel room, having with him only clothing and other personal effects of practically no value to anyone but himself. During the last eight years of his life, he remained at this residence, except for a few absences of a month or two at a time mostly, as it appears, because of his affliction of hay fever or asthma, particularly virulent at some certain times of the year.

The above simple recital of his manner of living appears to constitute a full statement of facts as to the decedent's personal residential situation during the last eight years of his life. Every other comment is negative in its nature, such as his owning no real property, household furniture or furnishings or automobile, his never registering to vote in Nassau County and it not appearing that he ever joined any church or organization of any description in that locality. From all of this it appears that there is slight evidence of his having " taken root " any more at Garden City than he had elsewhere during the years intermediate 1922 to 1941.

The next category of evidence to be considered is whatever indications there may be, if any, by which it affirmatively appears that he did not abandon his domicile at Binghamton, New York. It was shown that the City National Bank of Binghamton, New York, in 1924, was created his business agent under a so-called " Agency Agreement " and that this arrangement continued until his death. As such, the bank handled the major portion of his business affairs comprising the sale and purchase of stocks and other securities, etc. He also maintained checking and savings accounts in Binghamton banks (although he appears to have also maintained bank accounts in New York City during the period in question). It appears that he kept in touch in relation to his business affairs with the bank in Binghamton. His income tax return was made out by it or by its accountants and filed in Syracuse, New York, which is the headquarters for the administrative district including Broome County, but not including Nassau County. It does not appear that he was physically present in Binghamton during the last eight years of his life, at least not in any sense of dwelling here even for a short time.

Admittedly, the evidence is slim either way, i.e., as to retention of his Binghamton domicile as well as his having united animus to the factum in relation to the Nassau County habitation. But the contention that he retained Broome County as his domicile does not rest on the persuasiveness of evidence of retaining connections here as much as it does on the paucity of evidence of his having established a residence (in the sense of domicile) in Nassau County. The principle that the established domicile continues until displaced by another, which, in effect, means that the burden of proof lies with the party contending that the domicile was changed, is especially applicable in this particular case.

It further appears that one of the most cogent circumstances to be taken into consideration is the incontrovertible fact that the testator wrote a codicil to his last will and testament in 1946. In this codicil, he made reference to his residence, saying, " I, Alexander C. Lamoutte, a resident of the City of Binghamton, County of Broome, State of New York, temporarily residing at Garden City Hotel, Garden City, County of Nassau, State of New York," etc. In the will itself (written in 1924), the language as to residence is, " I, Alexander C. Lamoutte, a resident of the State of New York, United States of America, temporarily sojourning occasionally in Paris, France," etc. In two intervening codicils, one executed in 1924 and the other in 1930, he said nothing concerning his residence.

Since domicile is a matter of intent, and since Mr. Lamoutte was the only person who could actually know his own intent, his declaration on this subject as to the " animus " element of the coupled component determinatives of domicile would seem, in its relation to the other facts and the general situation of the present case, to be the most significant single piece of evidence in the case. There are cases where declarations have been given but scant effect in determining domicile. In some instances, domicile has been determined contrary to the statement, either orally or in legal or other writings, made by the person in question. The most notable case on this point is *Texas* v. *Florida* (*supra*) in which *Matter of Trowbridge* (*supra*) is cited. But it appears that such determinations have been reached on the theory that " Actions speak louder than words," in cases where the person's acts, manner of living, etc., were distinctly contrary to or inconsistent with his statement (e.g., *Matter of Hernandez,* 172 App. Div. 467). Frequently, such situations have arisen in cases where, because of tax advantages or some other real or supposed reason of economic bearing, there is a basis of inference

that the declarant of domicile had an ulterior motive, that his expression did not necessarily or probably reflect the truth. In any event, where his manner of living belies his statement, the former prevails. (*Matter of Trowbridge, supra*; *Curtis* v. *Curtis*, 185 App. Div. 391; *Matter of Harkness*, 183 App. Div. 396; *Texas* v. *Florida, supra*.)

But here the situation is very different. Since both counties in question are in the same State, the governing law, of course, is exactly the same in one as in the other. Although Mr. Lamoutte, only once, as far as appears in the present evidence, in his codicil of 1946, stated his residence as being in Broome County, there is no reason to doubt but that this was an honest and sincere statement on his part. In this respect it is different from cases where a decedent appears to have pursued a policy of stating his residence or domicile contrary to what it really is because of some probable or illusory anticipated advantage in doing so. In some of these cases, decedents have repeated and emphasized their declarations of residence. In such cases it appears that the courts have been inclined to consider the philosophy inherent in the Shakespearian quotation, '' The lady doth protest too much, methinks.'' One timely statement of intention or mental attitude, unimpugned by any circumstance to the contrary and which we cannot reasonably doubt was honest and sincere because of the total absence of any possible motivation to falsify it, can be taken to be stronger than a long series of them in a case where it appears there was some motivation, or, at least, a possibility that such existed, to try to make out a domicile contrary to what it really was as demonstrated by the person's manner of living.

The law of domicile might have been evolved to the effect that, in cases where a person has had a place of habitation for some minimum specified period of time, i.e., has been physically present thereat during such a period for most of the time, that, as to such period of time, such place must be conclusively presumed to be his residence and domicile. (Subdivision 5 of section 249 of the Tax Law shows that a statute along this line, for purposes of taxation, has been enacted.)

As the law of domicile is, in an appropriate case, domicile may be determined from physical presence of a considerable duration as a matter of law from habitance inconsistent with any intent other than '' *animus manendi* ''. (*Matter of Grant*, 83 Misc. 257, 263.) But here the objectant has fallen short of adducing preponderating evidence of decedent's change of domicile from

Broome County to Nassau County, insofar as his animus was concerned. There is no showing of circumstances from which an *animus manendi* may be reasonably inferred.

A determination in this case that the decedent changed his domicile to Nassau County would, necessarily, be based practically on the sole fact of his eight years' sojourn in that county. This period of living at a hotel in Nassau County is practically devoid of usual incidents to the establishment of a home and becoming identified with a community. This circumstance, however, under the all-around situation here presented, is, in and of itself, not of the relative weight in the present case that it usually would be. In this regard, except for his position of employment, there is no great contrast between his personal ways and habits of life in Binghamton and Garden City. Decedent lived most of his adult life in hotels or rooming houses. He never was much of a participant in community affairs or home and family living. His having pursued no occupation is of no weight in the present connection, as he had not done so elsewhere either at any time since 1922.

But, in considering these facts as to the decedent's manner of living in their proper perspective in relation to other facts, we must do so without losing sight of the ultimate applicable principles. Again, we must remember that these are to the effect that an established domicile continues until shown to have been, not only abandoned, but replaced. The burden of proof that both of these principles are satisfied is with the objectant. Considerations in relation to the manner of living of the decedent at Binghamton in comparison with Garden City does not show much of a preponderance either way. But we cannot determine the close issue here presented both ways or neither way. The domicile must be adjudicated as in Broome County or Nassau County. There is no other alternative.

It seems to me that what few domiciliary indicia characterized the decedent's life from 1907 to 1922 in Binghamton, which are not identified with his life thereafter, and his keeping up of some of his interests and connections here, together with his indubitably honest and sincere statement of his state of mind in relation to his domicile contained in his codicil of 1946, tips the beam rather perceptibly in the direction of Broome County. Even if the propriety of this conclusion is at all doubtful, we still have to remember that evenly balanced scales will not serve as the requisite condition for success of the party charged with the burden of proof. In other words the composite picture presented is at

least of a case where, the intentional abandonment of an old and acquisition of a new domicile not having been sufficiently demonstrated, the law steps in and assigns a domicile which, for legal purposes, every person must be deemed to have or to have had. To hold otherwise would be to assume to repudiate the long-established principle that living in a place, unaccompanied by preponderating indicia of intent to make it one's home, leaves the previous domicile unsuperseded.

The present instance is clearly distinguishable from the cases particularly urged by the objectant. Prominent among these is *Matter of Trowbridge (supra)* in which the Court of Appeals, in holding a decedent's residence at his death to have been in Connecticut instead of New York, reversed the Appellate Division which had affirmed the Surrogate. In that case, the deceased, in a series of legal documents and otherwise, had claimed a New York domicile. It appears that he was acting pursuant to legal advice and had an ulterior motive in doing so. He had built a costly mansion and extensively furnished a very elaborate homestead at Noroton, Connecticut. For several years immediately preceeding his death, he, with his family, lived there exclusively. The court took a realistic view of the situation in determining the final domicile of decedent in that case to have been in Connecticut. It is readily apparent that the single hotel room of the decedent in this case, together with the absence of any economic motive to claim one place rather than another, is in sharp contrast with the situation as it was in the *Trowbridge* case. The same observations are true of *Texas* v. *Florida (supra)* and other cases cited by objectant are similarly distinguishable.

Finally, it is urged by proponent, that the City National Bank of Binghamton, as the former business agent of Mr. Lamoutte and as the prospective executor, being located in Broome County and having in its custody practically all of the securities comprising assets of the estate, together with records of decedent's affairs, because of convenience and economy in the administration, the jurisdiction of this court is justified and warranted. The case of *Bolton* v. *Schriever* (135 N. Y. 65, 73) is cited as a case indicating that, when the question of domicile is between counties and not States, " The answer rests largely on convenience of administration." But this was a case where, in the probate proceeding, no issue of jurisdiction had been raised, and the question arose subsequently and collaterally in an ejectment action. Some intimation to the same effect is taken from *Matter*

*of Wendel (supra)* by reason of the court's having taken the view in that case that, '' No arbitrary and improper choice of a particular surrogate's court '' had been made. But, in the same case, Surrogate FOLEY expressed the view that expediency, convenience and economy has nothing to do with the issue of jurisdiction, citing *Matter of Daggett (supra,* p. 245). The law prescribes that it shall be based on residence, which, in this connection, means domicile. The contention that administration of the present estate could be more economically and expeditiously handled in Broome County cannot, therefore, be regarded as in any way bearing upon the present issue.

Reverting to the foregoing authorities and reasoning based thereon in relation to criteria of domicile, the inescapable conclusion is that the decedent, at least, for purposes of succession to his estate, died a resident of Broome County. This court, therefore, has jurisdiction of the proposed probate pursuant to the provision of section 45 of the Surrogate's Court Act. Proceed accordingly.