Edgar F. Hazleton, S.
The will of decedent has been propounded in the Suffolk County Surrogate’s Court. The “ Public Administrator ” of Cascade County, California, raised objections to the probate upon the grounds that decedent died domiciled in his county and not in Suffolk County. Decedent, with her husband, for many years, lived in their manor home, Blueblinds, at Smithtown, Long Island. Their graves are in closeby Saint James. He died on November 23, 1955, his wife following him on May 1, 1956. In the general election of 1955, she voted from her home in Smithtown. The couple also maintained an apartment for their convenience in Brooklyn, where the husband’s business was located.
Early in January, after her husband’s death, decedent left for a two months’ recuperative vacation in Palm Springs, California, intending to return to New York in the spring. She rented a furnished house in Palm Springs for the period of her expected stay, but on or about March 23, 1956, purchased a house and furnished it appropriately to her station in life. About this time, decedent telephoned her housekeeper in Smith-town and requested her to bring the station wagon to Palm Springs along with a pet, household effects and paraphernalia. Most of the deceased’s personal clothing had already been shipped to California. During these telephone conversations and after the housekeeper and her husband came to California, they found the decedent to be quite elated over her new purchase and desirous of remaining in California and living in the house. In fact, decedent urged the housekeeper and her *346 husband to sell their home in New York and stay in California. Decedent, however, was unexpectedly called to New York and left word for the housekeeper to remain in California until she returned. The occasion was probably the closing sale of Blue-blinds in Smithtown, which was part of her late husband’s estate.
The next incident insofar as this narrative is concerned occurred on April 15, 1956 when decedent; a gentleman who had accompanied her from California, and a Mr. Vita, who had purchased the Smithtown property with most of its contents, foregathered at the residence, Blueblinds, so that decedent might select the articles which Mr. Vita had not purchased. The movingman, who was also present, was instructed to pack those articles and bring them to decedent’s apartment in Brooklyn, which he did. Later the movingman packed the furnishings in the decedent’s Brooklyn apartment and took them to storage along with what decedent had moved from Blueblinds. The movingman was to await further instructions as to when to take them to California, for which he proceeded with arrangements. Some of the furnishings were to go into the house that decedent had purchased and some to the shop of the man who had accompanied her from California.
While in New York, decedent called several friends and relatives. To some of them she stated that she would be returning to live in her new home in California and requested they come visit her there. She was in New York about a week when she became ill, and the last hotel she resided at after the sale of Blueblinds listed her address as Palm Springs.
For several years, decedent had suffered from a malady which after her husband’s death became aggravated. And while she was here in the Spring of 1956, attending to the sale of her home and furnishings, her condition became critical. She died without having shipped her belongings to Palm Springs and never having for so much as a day resided in the house she had purchased, although, of course, she had been there.
The proofs in domicile cases are not usually directed down a one-way street to a clear solution. These cases concern everyday acts and conversations of people not designed to frame issues in a court of law. What is said in one breath may sometimes be retracted or modified in another. Experience has shown that decisions altering one’s way of life and moving his domicile are not made or manifested in a given moment. There is usually a course of events which bears upon a person’s judgment and finally results in the ultimate decision. There may be *347 no precise event that can be shown to establish the moment of change, but all the circumstances must be examined to arrive at a just answer. So too, this case is not without conflict; nevertheless, the evidence submitted causes me to come to the following conclusions:
When decedent, in January, 1956, left her home in Smithtown for Palm Springs, she intended to return to her domicile in Smithtown. For her vacation in Palm Springs, decedent had rented a furnished residence. While on vacation, she later purchased a home, began furnishing it, and was preparing to move most of her remaining possessions there, but due to her death, she was unable to live there so much as a day. Before she left Palm Springs and while last in Smithtown and Brooklyn, attending to the sale of her home and furnishings, decedent expressed her plans to live in Palm Springs. She did not say how long or how much of each year. She also said that she planned to keep an apartment in New York City.
The law governing domicile is basic and has oft been repeated. “ The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change.” (Matter of Newcomb, 192 N. Y. 238, 250.) The cases all hold there must be physical presence united with an appropriate intent. Some speak of residence, abode or factum uniting with intention or animus. The exact words may vary but the meaning is always the same. (Dupuy v. Wurtz, 53 N. Y. 556; Matter of Newcomb, supra; Rawstorne v. Maguire, 265 N. Y. 204; Perkins v. Guaranty Trust Co. of New York, 274 N. Y. 250; Matter of Wise, 165 App. Div. 420; Matter of Johnson, 259 App. Div. 290; Matter of Walter, 48 N. Y. S. 2d 952; Matter of Lamoutte, 195 Misc. 907; Restatement, Conflict of Laws, § 16.)
On Long Island and in and about New York City is where decedent spent her married life. There is where her friends dwelt and where her roots were planted. In its soil both she and her husband now rest.
Several places of domicile have been urged including possible changes of domicile “ from Finland to California, Ohio to California, New York County to California, Brooklyn to California, or Suffolk to California.” On a consideration of the full record and of all the filed papers herein, I conclude that, while there is conflicting evidence as to any domicile by choice, the balance must be struck in favor of the New York domicile as against others including California. A New York domicile is clearly shown to have been established, and the necessary burden of proof indicative of an unequivocal intent to per *348 manently reside in California or other State, and an abandonment of decedent’s established New York domicile has not been met. As far as California domicile is concerned, the proof is insufficient to hold that decedent was more than “ a bird of passage ” in California, despite the purchase of a residence there. The maintenance of a residence in California for purposes of recuperation of health or other purpose is not inconsistent with a New York domicile under all the facts presented. This court is convinced the burden of proof of change of the established New York domicile has not been successfully carried. (District of Columbia v. Murphy, 314 U. S. 441; United States Trust Co. v. Hart, 150 App. Div. 413, mod. 208 N. Y. 617; Matter of Wendel, 144 Misc. 467; Matter of Walter, supra; Matter of Kronig, 36 N. Y. S. 2d 909.)
The objections are dismissed. Submit decree accordingly on notice.