In the Matter of the Estate of DARIO SHINDELL, Deceased. BETTY S. HONE, Appellant; SPENCER BAREFOOT et al., Respondents.

First Department, December 20, 1977

## APPEARANCES OF COUNSEL

*Michael E. Schoeman* of counsel *(Williamson & Schoeman,* attorneys), for appellant.

*Frederick Lubcher* of counsel *(Fried, Frank, Harris, Shriver & Jacobson,* attorneys), for Spencer Barefoot, respondent.

*Pamela Anagnos Liapakis* of counsel *(Lipsig, Sullivan, Mol-*

*len & Liapakis, P. C.,* attorneys), for Anne Baldwin, respondent.

## OPINION OF THE COURT

LANE, J.

Dario Shindell came to New York City in 1967 when he was age 63. He died in the State of New York on July 9, 1974. Two unwitnessed holographic wills were drawn by the deceased; one was drawn in 1945, while the deceased lived in the State of California; the second was drawn in 1973 while the deceased lived in the State of New York. The validity of either will is dependent upon whether Shindell was a domiciliary of New York or California.

The law of the State of New York does not recognize holographic wills as valid (EPTL 3-2.2, subd [b]).* California law, however, does in fact recognize holographic wills when handwritten by the testator himself (Cal Probate Code, § 53) and proof to that end is adduced (Cal Probate Code, § 331; Cal Evidence Code, § 1415).

The Surrogate directed that in this contested probate proceeding a hearing be held on the issue of the domicile of the decedent. The evidence adduced at that hearing revealed that Dario Shindell left California after his arrest and attendant publicity in California which indicated his possible involvement in an art-theft ring. From 1967 to the date of Shindell's death in 1974, he lived in Manhattan, and he executed successive residential leases there. He also transferred all of his bank accounts to the State of New York; opened a stockbrokerage account in New York; obtained employment in New York for a short period prior to his retirement in 1969; and listed his New York address as his permanent residence on his tax returns. He met and traveled with New York friends; he took advantage of New York's cultural benefits; and never once during the last seven years of his lifetime ever set foot in the State of California. He left no property in the State of California.

Interestingly enough, in the filing of Shindell's tax returns, he always listed New York as his residence except for his tax return filed in 1968 reflecting income for the year 1967. In

---

* The three statutory exceptions which would result in the State of New York recognizing the validity of a holographic will are concededly not extant in the case at bar (EPTL 3-2.2, subd [b], pars [1], [2] and [3]).

that return only, he listed a California address. When Shindell's father died in 1972, Shindell attended the funeral which was in Washington State. Although he was physically proximate to his former domicile, California, he nonetheless did not go to California to visit with friends or to visit his old haunts but, rather, returned directly to New York.

The objectants to the admission of the 1945 holographic will who seek to prove that Shindell died a California domiciliary take solace in the fact that the decedent had expressed an objection to working in an election campaign in New York, stating, "New York is not my legal residence. * * * I don't vote here"; and made other statements to individuals with whom he was friendly which indicated that he still would like to go back to California. They also note that the decedent was not registered to vote in New York and did not have a New York driver's license. Proof by silence generally is not the most convincing of arguments, and we in the majority find it unconvincing in the case at bar as well. The objectants made no showing, for example, that, as an offset to the absence of the New York voting registration by Shindell, or his failure to obtain a New York driver's license, Shindell *did* possess a California driver's license or that he *was* registered to vote in California.

To the contrary, the brother of the decedent testified about conversations he had with the decedent in 1972, while the decedent was on the West Coast. The decedent was said to have stated that New York was the only place in which he would live because of his cultural activities and because of his "social activities," which were a great part of his life. He allegedly told his brother that he could never go back to California.

The Surrogate found that the decedent died a domiciliary of California. We disagree and would reverse that finding.

Domicile is defined as "[a] fixed, permanent and principal home to which a person wherever temporarily located always intends to return" (SCPA 103, subd 15). Determination of the intent of an individual is, of course, governed by the acts of that individual. While the words of an individual relative to his intent regarding domicile "are to be heard for what they are worth" *(Matter of Newcomb, 192 NY 238, 252),* the significance of the words becomes greatly diminished when contradicted overwhelmingly by physical acts and contrary statements.

In *Matter of Trowbridge* (266 NY 283) the decedent, in 1904, purchased a residence which was his admitted domicile until 1921, when it was destroyed by fire. From 1921 through 1924, Trowbridge lived in New York City; filed a verified statement with Connecticut tax authorities as a nonresident of that State, which declaration was never withdrawn; transferred his name to the resident tax roll of Manhattan; voted solely in New York City; and stated to one of his sons that he was a resident of the State of New York. However, between 1921 and 1924, Trowbridge rebuilt a new home in Noroton, Connecticut, at a cost of a half-million dollars, and from the time the structure was completed in 1924 until the date of his death in May 1931, he lived in his new home in Connecticut. The court found that, despite the repeated declarations and statements of Trowbridge that he lived in New York, nonetheless his establishment of a residence in Connecticut clearly established his domicile in that State rather than in the State of New York.

Similarly, in *Petersen v Chemical Bank* (32 NY 21) it was established conclusively that the domicile of the decedent Cohen at the time of his death was in Connecticut and not in New York. The court in *Petersen* was persuaded by the fact that Cohen purchased an expensive house for his residence; furnished it with servants; repaired it; supplied it with furniture and fuel; and died ultimately in Connecticut.

In the case at bar, the alleged declarations of the decedent to some of his friends that he wished to go back to California were far outweighed by his actual continuous residence in the State of New York for a period of seven years; his never returning to California; his maintenance of all his business and social affairs here in New York; and the statement to his own brother that he never intended to return to California.

In sum, the totality of the acts and statements of the decedent permit of only one inference: that he was a domiciliary of New York (cf. *Rubin v Irving Trust Co.,* 305 NY 288, 306). We conclude, therefore, that Dario Shindell died a domiciliary of New York and not a domiciliary of California.

Accordingly, the order of the Surrogate's Court, New York County (decision of DI FALCO, J.; order signed by MIDONICK, J., pursuant to SCPA 2602, subd 1, par [b]), entered December 30, 1976, determining that the deceased's domicile when he executed the 1973 instrument purporting to be his last will and

testament and at his death was the State of California, should be reversed on the law and the facts, and an order should be entered declaring the decedent's domicile at the time of the execution of the 1973 instrument, as well as at the date of his death, to be the State of New York, without costs or disbursements.

KUPFERMAN, J. P. (concurring). Although born in Bethlehem, Jesus Christ was known as The Nazarene, because his family then currently lived in Nazareth but had to return to their ancestral home for a census registration. (Luke 2:1-7.) Edward Everett Hale wrote "The Man Without A Country", and Thomas Wolfe said "You Can't Go Home Again".

Obviously, at the time the decedent prepared his holographic will in New York, he was carrying the torch for California, but the flame had long since burned out with little hope of refueling.

The best that can be said for the possibility that California was still viable for the purpose of domicile, was that the decedent was "wandering between two worlds, one dead the other powerless to be born". See Matthew Arnold's "The Grande Chartreuse".

Because we cannot leave the matter in limbo, the only logical conclusion is that the decedent was a New Yorker.

LUPIANO, J. (dissenting). Proponent seeks to probate a one-sentence unwitnessed holographic will dated June 25, 1945 bequeathing to her the decedent's entire estate. Objectants premised their opposition on a subsequent instrument purporting to be a more detailed unwitnessed holographic will dated August 19, 1973 executed by decedent in New York City which, *inter alia,* revoked the prior 1945 holographic will executed by decedent in California.[1] Proponent moved to strike the objections or, in the alternative, for summary judgment. Surrogate DI FALCO held the motion for summary judgment in abeyance pending determination of the limited issue of domicile. A hearing on this issue was held before Surrogate DI FALCO which resulted in an order determining that the decedent was domiciled in the State of California on August 19, 1973 when he executed the purported holographic will dated that day, and that decedent was also domiciled in

---

1. Under the 1973 instrument, the decedent's brother is to act as executor and is to receive one quarter of the estate with the decedent's sister-in-law and two friends to receive each a quarter share.

California at the time of his death. The validity of the 1973 instrument, the Surrogate ordered, was to be determined on the basis of decedent's California domicile at the time of execution of said instrument. This appeal followed.

A holographic will is valid in New York only if made by a person so authorized to make such will as provided for in EPTL 3-2.2. It is not urged that decedent was so authorized. Accordingly, the issue of domicile is critical.

It is conceded that decedent came to New York from California in 1967, his domicile at that time, and that he died in New York on July 9, 1974. Testimony elicited at the hearing discloses that the reason for decedent's departure from California was the notoriety generated by certain publicity and decedent's endeavor to obtain a new abode until that notoriety was dissipated. Further proof revealed that decedent resided in New York from 1967 to the time of his death in 1974, first at hotels and then in an apartment under long leases. As noted by the Surrogate: "he filed New York tax returns, maintained New York bank and stock brokerage accounts and had a social and cultural life in this City of New York." Several witnesses testified to repeated declarations by the decedent that he considered California to be his home and intended to return there.

"Domicile" is defined in SCPA 103 (subd 15) as "[a] fixed, permanent and principal home to which a person wherever temporarily located always intends to return." A domicile of a person "is the place where a person lives, with the intention of making it his fixed and permanent home. It is that place in which one has voluntarily fixed his abode with a present intention of making it his permanent home * * * There is a difference in meaning between residence and domicil, * * * 'Residence' in its strict sense means merely 'place of abode.' It is of a temporary character and the fact that it is such makes it in law no domicil. Residence is the abode or place where one actually lives. It implies an established abode fixed permanently for a time for business or other purposes, although there may be an intent existing all the while to return to the true domicil. Residence is determined by physical fact alone, but domicil depends on intent * * * 'Residence' means simply living in a particular locality, but 'domicil' means living in that locality with intent to make it a fixed and permanent home" (17 NY Jur, Domicil and Residence, § 2).

In *Rawstorne v Maguire* (265 NY 204, 208) the Court of

Appeals observed: "Residence simply requires *bodily presence* as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. The *existing* [emphasis supplied] domicile, whether of origin or selection, continues until a new one is acquired."

It is well recognized that "[t]he abandonment of an established domicil is a prerequisite to the acquisition of a new one, and to establish a change of domicil, such abandonment must clearly appear. In other words, the intent required in the acquisition of a new domicil involves an intent to abandon the old dwelling place as a home. To effect the abandonment of one's domicil in favor of another, there must be choice of a new domicil, actual residence in the place chosen, and intent that it shall be the principal and permanent residence * * * However, since no person can be without a domicil, and since an established domicil continues until superseded by another, even if an established domicil has been abandoned, or an attempt has been made to abandon it, it remains as the domicil the law will assign, unless and until another is shown to have been adopted. Renunciation of one home is not sufficient as a change of domicil without the acquisition of another" (17 NY Jur, Domicil and Residence, § 13). As noted in *Matter of Newcomb* (192 NY 238, 250): "The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change. The question is one of fact rather than law * * * In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence is of no avail. Mere change of residence although continued for a long time does not effect a change of domcile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect. *Uno solo die constituitur domicilium si de voluntate appareat.* Residence is necessary, for there can be no domicile without it, and important as evidence, for it bears strongly upon intention, but not controlling, for unless combined with intention it cannot effect a change of domicile."

It is beyond cavil that the decedent herein established a residence in New York. What must be decided is whether he adopted New York as his domicile. Given California as his established domicile in 1967 when he left that State for New York, it is presumed to continue until shown to have been

abandoned. Further, assuming abandonment of California as the domicile, that State remains the domicile *the law will assign,* unless or until another is shown to have been adopted. In *Matter of Blankford* (241 NY 180, 183) Judge CARDOZO declared: "Renunciation of one home is not sufficient without the acquisition of another. The domicile of origin continues until displaced and superseded by a domicile of choice [citation]." Patently, the burden of proof is on the party claiming that such domicile was succeeded by a later one *(Matter of Newcomb, supra; Dupuy v Wurtz,* 53 NY 556; *Matter of Lydig,* 191 App Div 117; *Matter of Lamoutte,* 195 Misc 907, 910).

In light of the above legal principles the testimony and evidence presented at the hearing disclose that the Surrogate correctly concluded that the proponent had failed to sustain her burden of establishing by clear and convincing proof that the decedent had established a new domicile in New York. In addition to the testimony hereinabove delineated, there was testimony that decedent refused to become active in the New York chapter of the American Association for Retired People or to head a Senior Citizens' Committee for a presidential candidate in New York because of his avowed reason that he did not know when he would return to California and was only in New York temporarily. Indeed, one of the witnesses declared that decedent did not initially apply for Social Security benefits in New York because he regarded himself as not a "resident" of this State. Morton B. Jackson, a California attorney, a friend of decedent since 1959 who shared a common interest with decedent in opera and music, testified to conversations had with decedent in 1972 and 1973 respecting possible job opportunities in the operatic musical field in California and that decedent expressed an interest in those opportunities and a willingness to return to California. In this connection the decedent stated that he regarded California as his home, often considered returning to California and desired a suitable opportunity to return. Further, it appears decedent met with a Mr. Saunderson in April, 1973 in New York to discuss the possibility of the former's taking an opera related post in California.

Decedent's brother testified that in 1972, when decedent visited him in the State of Washington to attend their father's funeral, the latter declared that New York was the only place he would live in because of its cultural advantages respecting the theatre and that he could not return to California because

of the events which prompted him to depart that State in 1967.[2]

Proponent's reliance on the fact that decedent filed tax returns while residing in New York, showing New York as his residence, is not dispositive. It is the issue of domicile, not residence which is controlling. As the Surrogate succinctly states: "A long term residence engenders a milieu of cultural exchanges, financial transactions and compliance with local tax, license and other regulations. These are as inescapable as the purchase of food, clothing and shelter. Thus, 'while acts speak louder than words, the words must be heard for what they are worth.' (*Matter of Newcomb, supra*, p. 251.)"

The contention that decedent retained domicile in California in 1973 at the date of his death is not supported by evidence of retaining connections by decedent with California after 1967, but rather rests on the lack of clear and convincing evidence of his establishing a new domicile in New York. Domicile being a question of intent, only the decedent could actually know his own intent. His declarations on this issue viewed in the context of the absence of any ulterior motive in such expressions, are most compelling. To reiterate some salient considerations: decedent left California under circumstances indicating he felt constrained to do so, not because he freely wanted to do so; seven of his friends and acquaintances testified to oral expressions by decedent that he regarded California as "home," desired to return there someday and viewed New York as a temporary residence. Decedent's brother testified to a contrary oral expression by decedent to the effect that he felt he could never return to California and that New York was his home. Finally, it appears that decedent while in New York did meet with a California resident, Mr. Saunderson, who was visiting New York in 1973, under circumstances indicating a desire to obtain employment in California in an operatic related capacity. Common sense dictates that on this record there is presented the picture of an individual who did not desire to cut off contact with a domicile he felt *forced* to leave. The composite picture, then, is at least one where the acquisition of a new domicile in New York has not been sufficiently demonstrated. Under these circumstances, the law steps in and assigns a domicile which, for legal purposes, every person must be deemed to have.

---

2. Milton Shindell, decedent's brother, is a beneficiary under the 1973 instrument and not under the 1945 will and this testimony, supportive of proponent, his sister, would appear to be against his own interest.

Accordingly, it is concluded that the Surrogate correctly determined that "on all of the credible evidence on this record that petitioner has failed to meet her burden of change of domicile."

The order of the Surrogate's Court, New York County (MIDONICK, S.), entered December 30, 1976, which adjudged that Dario Shindell was domiciled in the State of California on August 19, 1973 and at the time of his death, should be affirmed.

CAPOZZOLI, J., concurs with LANE, J.; KUPFERMAN J. P., concurs in an opinion; LUPIANO, J., dissents in an opinion

Order, Surrogate's Court of the State of New York, New York County (decision of DI FALCO, S.; order signed by MIDONICK, S. pursuant to SCPA 2602, subd 1, par [b]), entered on December 30, 1976, reversed on the law and the facts, and an order entered declaring the decedent's domicile at the time of the execution of the 1973 instrument, as well as at the date of his death, to be the State of New York, without costs and without disbursements.